**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALLIED WASTE NORTH AMERICA, INC., A** | ) | |
| **Delaware Corporation; and BFI WASTE SERVICES,** | ) | |
| **LLC, A Delaware Limited Liability Corporation,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:13-CV-0254** |
| | ) | **Judge Sharp and** |
| **LEWIS, KING, KRIEG & WALDROP, P.C., A** | ) | **Magistrate Judge Griffin** |
| **Tennessee Professional Corporation; LINDA** | ) | |
| **HAMILTON MOWLES, An Individual; and** | ) | |
| **DEBORAH STEVENS, An Individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR**
**SUMMARY JUDGMENT OF DEFENDANTS LEWIS, KING, KRIEG**
**& WALDROP, P.C., LINDA MOWLES, AND DEBORAH STEVENS**

SUMMARY OF ARGUMENT

Considering undisputed facts in the light most favorable to the plaintiffs Allied Waste

North America, Inc. and BFI Waste Services, LLC (collectively "Allied") and indulging Allied

every inference which reasonably could be drawn from those facts, any claims made against

Lewis, King, Krieg & Waldrop, P.C., Linda Mowles, and Deborah Stevens (collectively "Lewis

King") are barred by the statute of limitations. This lawsuit was filed March 20, 2013. Well

before March 20, 2012, Allied knew or reasonably should have known of Lewis King negligence

(assuming solely for the sake of this motion for summary judgment that there was negligence).

Well before March 20, 2012, Allied suffered legally cognizable harm as a result of that

negligence. Suit filed on March 20, 2013 was simply suit filed too late.

Again, assuming solely for purposes of this motion that there was negligence on the part

of Lewis King, the Allied claims fail because, for a variety of reasons, Allied cannot show that the Lewis King negligence caused damage (*i.e.*, a result in the "underlying lawsuit") which would not otherwise have occurred.

<u>HISTORY</u>

On May 23, 2002, fire destroyed a solid waste disposal facility commonly known as the Nashville Thermal Plant. The thermal plant was owned by the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"). First Amended Complaint, Document 12, paragraph 14.

Metro and its insurer, The Travelers Insurance Company ("Travelers"), sued Allied and other defendants. *Id.* at paragraph 15. Metro and Travelers sought to recover for damage to the thermal plant, damage to personal property (primarily cranes) and business losses. Allied, through its insurance carrier AIG, hired the Nashville firm of Levine, Orr & Geracioti, PLLC ("Levine Orr") to represent Allied. *Id.* at paragraph 16.

During the course of discovery in "Metro v. Allied," Levine Orr attorney Robert Orr failed, according to Allied's allegations, "to timely designate and produce a proper witness to testify on behalf on behalf of Allied/BFI's policies and procedures pursuant to Rule 30.02(6) of the Tennessee Rules of Civil Procedure." *Id.* at paragraph 18. This failure led to the trial court sanctioning Allied. The sanction took the form of an adverse inference instruction which told the "Metro v. Allied" jury that "it could infer from the Levine Orr defendants' failure to abide by its discovery obligations that Allied/BFI's policies and procedures and Rule 30.02(6) witness testimony were unfavorable to Allied/BFI's defense." *Id.* at paragraph 10.

2

Further, in preparation for trial, Levine Orr retained a construction expert, Jonathan Held, to offer expert opinion at trial that the thermal plant had a negligible market value immediately before the destructive fire. *Id.* at paragraph 22.

Shortly before trial, Metro filed a motion in limine to exclude the opinion testimony of Held with respect to the "before and after value" of the thermal plant. *Id.* at paragraph 23. The trial court granted the motion, excluded the "before and after value" testimony of Held, and further ruled that any evidence concerning Metro's pre-fire plans for demolition of the thermal plant shortly after the date of the fire was inadmissible. *Id.* at paragraph 24.

Trial of "Metro v. Allied" began on September 27, 2010. As a result of the adverse rulings by the trial court on the "sanctions" issue and the "Held exclusion" issue as well as other adverse rulings at a September 9, 2010 pretrial hearing, Allied and its carrier AIG retained Lewis King "to protect and preserve appellate issues and to monitor the trial for appellate issues." Exhibit A, Deposition of Deborah Stevens, pp. 44-47 and Exhibit 52. It was five days before trial was to begin.

Stevens came from Knoxville to Nashville three days before trial began, met with Orr, and reviewed documents in order to gain some understanding of a lawsuit which had been pending for five years. Exhibit A, pp. 13-14. Stevens and/or Daniel Olivas, another Lewis King attorney, attended every day of trial and reported on proceedings to Allied and AIG; they also provided other types of assistance, for example, attempting to facilitate settlement negotiations and assisting Orr in drafting a jury instruction which would address the "adverse inference" issue. Exhibit A, pp. 49, 78-80, 28-29, 68-70.

On October 5, 2010, the jury in "Metro v. Allied" returned a $7,200,000 verdict against

3

Allied.  First Amended Complaint, Document 12, paragraph 28.

Shortly after the jury returned its verdict and before judgment was entered, Allied and AIG retained yet another law firm, Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC ("Weinberg Wheeler") to represent Allied.  The role of Lewis King changed.  Deborah Stevens confirmed in a November 18, 2010 email to Weinberg Wheeler attorney Scott Witzigreuter that "your office will be handling the new trial motion with our support and then we will handle the appeal." Exhibit B, Deposition of Linda Mowles, pp. 120-121 and Exhibit 80 (emphasis added).

The deadline for filing the motion for new trial in "Metro v. Allied" was Monday, January 3, 2011.  Sometime prior to that deadline, Weinberg Wheeler made the conscious decision not to include the "Held exclusion" issue as one of the grounds in support of the motion for new trial.  Exhibit C, Deposition of Scott Witzigreuter, pp. 11-16.

On December 17, 2010, Weinberg Wheeler attorneys Witzigreuter and Josh Wood conferred by phone with Mowles.  The motion for new trial was a subject of discussion.  Mowles offered that Lewis King would be available as needed to assist on the motion for new trial. Exhibit B, p. 33.  Consistent with the earlier email of Stevens to Witzigreuter, Weinberg Wheeler was to take primary responsibility for preparing the motion for new trial.  Weinberg Wheeler had the entire trial transcript; Lewis King did not.  Exhibit B, pp. 123-128.

Late in the day on December 30, 2010, Witzigreuter emailed to Mowles and others a rough first draft of a brief to support the Allied motion for new trial.  Witzigreuter's email said that the draft had been prepared by Wood and that Witzigreuter had not yet reviewed the draft. Exhibit B, p. 65.  On Sunday, January 2, 2011, Mowles reviewed the Weinberg Wheeler draft brief in support of motion for new trial, made limited suggested changes, and exchanged emails

4

with Wood. Exhibit B, pp. 132-140. Mowles spoke by telephone with Wood. She told him that she had reviewed the brief but that she had not seen a motion for new trial. Mowles' impression was that Wood did not realize that a separate motion, in addition to a brief, had to be filed. When she so advised him, Wood's response was "an audible sigh of beyond frustration." Exhibit B, p. 69. Mowles therefore volunteered actually to prepare the motion for new trial, a task which was supposed to be Weinberg Wheeler's. She told Wood, "I'll take what you've done and I'll - - I'll create the motion here [*i.e.*, in Knoxville] and email it to you, so you don't have to worry about doing another document. And that's how I wound up drafting the motion." Exhibit B, p. 70. Mowles' concern was to get the motion timely filed. She saw that the brief had "extensive research," and she "didn't have time [in light of a filing deadline of the next day, January 3, 2011] to do my own research. I didn't have all the records to look at. They [*i.e.*, Weinberg Wheeler] had the files." Exhibit B, p. 70. To prepare the motion for new trial, Mowles simply took the brief which Weinberg Wheeler had prepared, incorporated the points which Weinberg Wheeler had alleged as error in the brief into a new document, styled that document with the "Metro v. Allied" style, and provided a signature line for Weinberg Wheeler.

> I took the style of the case, which is the court and the name of the parties and the case number, and gave it the heading, motion, and then filled in the right language, comes the parties, and - - and then put the points they had included in their brief, and then the signature line for them, correct.

Exhibit B, p. 46.

The motion for new trial as thus prepared included these issues as grounds for a new trial:

A.    The Adverse Inference Jury Instruction Arising from the Court's Decision to Sanction BFI for Alleged Discovery Violations Clearly Outweighs the Offense Committed,

Improperly Punishes BFI for an Offense Beyond its Control and Allowed the Jury to Draw an Inference that Contradicts Existing Evidence

B.   Plaintiffs Failed to Produce an Essential Element Of Their Cause Because Although BFI's Duties Arose Under Contract, No Contractual Duties Were Introduced Into Evidence At Trial; Indeed, Metro Never Introduced Any Evidence Establishing Duties Owed By BFI

C.   The Jury Instruction As To The Determination Of The Value Of Loss Was Inconsistent With Tennessee Law And Defendants Should Have Been Permitted to Introduce Evidence of The Pre-Loss Plan for Nashville Thermal

D.   The Court Must Allow BFI the Opportunity to Present Offers of Proof on Those Evidentiary Matters Subject to The Court's September 20, 2010 Order Limiting BFI's Presentation of Evidence

E.   The Verdict Was Excessive, Against the Weight Of the Evidence and Contrary To Principles of Justice

Exhibit B, p. 140 and Exhibit 102. These grounds were verbatim recitals of the grounds which Weinberg Wheeler had asserted as the bases for a new trial in the brief in support of motion for new trial. Exhibit B, p. 141.

Weinberg Wheeler finalized the motion for new trial and supporting brief and forwarded them to Levine Orr. Levine Orr filed the motion and brief on the afternoon of January 3, 2011. Exhibit D, Deposition of Robert Orr, pp. 197-199 and Exhibit 109.

When Mowles prepared the motion for new trial and forwarded it to Weinberg Wheeler, she did not understand that the "Held exclusion" issue was one which should have been specifically assigned as error in the motion for new trial. Exhibit B, pp. 140-141. She understood, Weinberg Wheeler having had the responsibility for preparing the motion for new

6

trial, that Weinberg Wheeler had put into the brief in support of the motion for new trial the issues which they wished to preserve in the manner in which they wished to preserve them. Exhibit B, pp. 142-143.

On January 20, 2011, Weinberg Wheeler forwarded via email copies of the motion for new trial and brief in support of the motion for new trial to Allied representatives Michele Casey and David Spruance. Weinberg Wheeler argued the motion. The trial court denied the motion.

Lewis King timely filed a notice of appeal on behalf of Allied on March 9, 2011. Amended Complaint, Document 12, paragraph 36.

Lewis King, principally through the efforts of Mowles, prepared Allied's appellants' brief and filed that brief on July 7, 2011. Exhibit B, p. 161 and Exhibit 145.

Metro filed its response brief as the appellee on September 7, 2011. In its "Summary of the Argument" Metro submitted that:

> BFI/Allied's primary point of contention centers around the trial court's exclusion of Mr. Held's real estate valuation opinions. <u>This point was waived when BFI/Allied failed to raise it in its motion for new trial</u>.

Exhibit B, pp. 164-165 and Exhibit 149, p. 13 (emphasis added). In its argument section Metro submitted the following as its proposition A: "The trial court properly excluded the real estate valuation opinions of Mr. Held." *Id.*, at p. 14. Subproposition 1 to this proposition was: "BFI/Allied failed to preserve appellate consideration of the trial court's exclusion of Jonathan Held's real estate valuation opinions." *Id.*, p. 15. The Metro brief then spent approximately one and one-half pages succinctly pointing out Tennessee law which establishes that a motion for new trial must describe with reasonable specificity the error which justifies relief and that a

7

failure so to specify constitutes waiver of issues not specified. *Id.* at pp. 15-16.

Even before she received Metro's principal brief on appeal, Mowles anticipated that Metro would make an argument that the "Held exclusion" issue had been waived because not sufficiently detailed in the motion for new trial. On August 29 and 30, 2011, Mowles spent 14.2 hours researching the waiver issue. Exhibit E, Affidavit of William Kunkel, p. 3 with attached Exhibit D.

In Metro's appellate brief, Metro argued that Allied had waived its right to argue the "adverse inference" instruction by not specifically objecting to the language of the instruction as given at trial. "[Allied's] trial counsel agreed to the language of the sanctions instruction." Exhibit 149 at p. 13.

On September 23, 2011, Mowles emailed to Michele Casey at Allied Allied's appellate brief and Metro's principal brief which explicitly detailed Metro's argument that the "Held exclusion" issue had been waived because not raised in the motion for new trial. Exhibit B, pp. 166-167 and Exhibit 153. Michele Casey promptly forwarded the brief to David Spruance. Exhibit F, Deposition of David Spruance, pp. 100-101 and Exhibit 149.

David Spruance received Metro's brief. He had the opportunity to review the brief. Exhibit F, pp. 101-102. Had he reviewed the brief, he would have realized that the first point in Metro's argument on appeal was that the "Held exclusion" issue had been waived by Allied not having specified it in its motion for new trial. Exhibit F, p. 102. Spruance is an attorney. When he received the Metro brief from Casey, he understood the meaning and significance of waiver as a legal doctrine. Exhibit F, p. 103. Spruance, and therefore Allied, had the opportunity to know that Metro had taken the position in the appeal of "Metro v. Allied" that Allied had waived the

8

"Held exclusion" issue because the issue had not been raised in the motion for new trial. Exhibit F, p. 104.

No later than September 23, 2011, Allied should have and could have known that Metro took the position on appeal that Allied had waived its right to argue the "Held exclusion" issue because it had not been raised in the Allied motion for new trial.

Lewis King regularly submitted statements to AIG, Allied's carrier, for services rendered. Exhibit E, p. 2. AIG paid the Lewis King bills, customarily within thirty days of receipt. Then, AIG sent documentation to Allied which prompted Allied to reimburse AIG for legal fees which had been paid. Exhibit F, pp. 200-203.

In the underlying action, the 14.2 hours which Mowles spent on August 29 and 30, 2011 researching the waiver of the "Held exclusion" issue were included in a bill which was sent to AIG on September 1, 2011. Exhibit E, p. 3 and Exhibit D. AIG paid the September 1, 2011 bill from Lewis King on October 4, 2011. Exhibit E, pp. 2-3.

On November 11, 2011, Allied "paid back" AIG for its having paid the September 1, 2011 Lewis King statement on October 4, 2011. Exhibit G, Affidavit of Darrell G. Townsend with accompanying Documents ALLIED 008262-008265. In other words, on November 11, 2011 Allied paid for those 14.2 hours which Mowles spent on August 29 and 30, 2011 researching the waiver issue which was raised by the failure to raise the "Held exclusion" issue in the motion for new trial. Even assuming for the sake of argument that there was negligence on the part of Lewis King in the drafting of the motion for new trial and that that negligence led to waiver of the "Held exclusion" issue on appeal, Allied suffered harm by virtue of that negligence no later than the date that it paid for the services of Mowles in researching the issue which was

9

created by the Lewis King negligence.

In the underlying action, Lewis King billed AIG for services rendered in preparing Allied's response brief on appeal on December 1, 2011.  Exhibit E, p. 3 and Exhibit F-1.  AIG paid the December 1, 2011 bill on January 3, 2012.  Exhibit E, p. 2.

On February 17, 2012, Allied "paid back" AIG for its having paid the December 1, 2011 Lewis King statement.  Exhibit G with accompanying Documents ALLIED 008246-008249.  In other words, on February 17, 2012, Allied paid for Lewis King time spent responding to Metro's appellate brief which argued that the language of the "adverse inference" instruction had been agreed to by Allied's trial attorney Orr.

<u>ARGUMENT</u>

I.  ALLIED'S CLAIMS AGAINST LEWIS KING ARE BARRED BY THE STATUTE OF LIMITATIONS.

In Tennessee, lawsuits against attorneys are subject to a one year statute of limitations. (When this lawsuit was filed that one year statute of limitations was found at T.C.A. § 28-3-104(a)(2).  The one year statute of limitations now is found at T.C.A. § 28-3-104(c)(1). References to the statute in this brief will be to the Code section which was in effect at the time of Allied's filing suit.)

The acts (construed in the light most favorable to Allied) and dates which are material to analysis of Lewis King's statute of limitations defense are these:

> January 3, 2011.  Orr files the Allied motion for new trial which does not specifically include the "Held exclusion" issue as grounds.

10

January 20, 2011.  Allied representatives Casey and Spruance receive the motion for new trial and supporting brief from Weinberg Wheeler.

July 7, 2011.  Lewis King files the Allied appellate brief.

August 29 and 30, 2011.  Lewis King attorney Mowles spends 14.2 hours researching the waiver issue raised by the failure specifically to include the "Held exclusion" issue as grounds in the motion for new trial.

September 1, 2011.  Lewis King sends a bill which includes charges for Mowles' 14.2 hours researching the waiver issue.

September 7, 2011.  Metro files its appellate brief, asserting waiver of the "Held exclusion" issue and waiver of a right to object to the language of the "adverse inference" instruction.

September 23, 2011.  Lewis King files the Allied response brief addressing waiver of the "Held exclusion" issue and waiver of the "adverse inference" instruction issue.  Lewis King emails that brief and the Metro appellate brief which asserted those issues to Michele Casey.  Casey forwards the briefs to Spruance.

October 4, 2011.  AIG pays Lewis King's September 1, 2011 statement.

November 11, 2011.  Allied reimburses AIG for its payment of Lewis King's September 1, 2011 bill.

December 1, 2011.  Lewis King sends a bill which includes charges for preparing a response to Metro's brief raising "Held exclusion" waiver and "adverse inference" instruction waiver.

January 3, 2012.  AIG pays Lewis King's December 1, 2011 bill.

February 17, 2012.  Allied reimburses AIG for its payment of Lewis King's December 1, 2011 bill.

March 22, 2012.  The Tennessee Court of Appeals issues its opinion in "Metro v. Allied."

March 20, 2013.  Allied files suit against Lewis King.

11

Attorney malpractice claims are subject to a one year statute of limitations. T.C.A. § 28-3-104(a)(2). The discovery rule determines when a cause of action accrues. The statute of limitations begins to run when the plaintiff knew or should have known that he suffered an injury as a result of the defendant's wrongful conduct. *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 521, 532 (Tenn.1998). It is not necessary that the plaintiff know the specific legal claim or the exact injury suffered. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn.1998). Instead, a plaintiff is "deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995)(emphasis added).

In a legal malpractice action, the claim accrues when: (1) the attorney's negligence causes the plaintiff to suffer a legally cognizable or actual injury; and (2) the plaintiff knows or in the exercise of reasonable diligence should have known that this injury was caused by the attorney's negligence. *Wilson v. Mathes*, 15 S.W.3d 865, 868 (Tenn.App.1999)(citing *Carvell*, 900 S.W.2d at 28-30).

A. Professional negligence is the gravamen of the Allied claims against Lewis King; therefore, all of Allied's causes of actions are subject to the one year statute of limitations.

Allied's first amended complaint asserts three causes of action - - negligence, breach of contract, and breach of fiduciary duty. All three causes of action are subject to the one year statute of limitations. The statute applies to "[a]ctions and suits against attorneys...whether the actions are grounded or based in contract or tort." T.C.A. § 28-3-104(a)(2)(emphasis added).

B. Allied's cause of action against Lewis King accrued well before March 20,

12

2012, *i.e.*, the date which is one year before the filing date of March 20, 2013.

> 1. Allied was harmed when waiver of a right to argue the "Held
> exclusion" issue occurred. That waiver occurred when the "Held
> exclusion" issue was not included in the motion for new trial.

In "Metro v. Allied," the Tennessee Court of Appeals determined that the "Held exclusion" issue had been waived because it had not been sufficiently detailed in the Allied motion for new trial. That motion was filed on January 3, 2011. Accordingly, that was the date when waiver occurred. That was the date on which Allied lost the legal right to assert on appeal that the trial court had erred in not allowing the Held testimony on "before and after value" at trial. That loss was a legally cognizable harm.

In *Kohl*, the Tennessee Supreme Court explained the broad scope of the phrase "legally cognizable damage." It explained that the term was broad enough to include the "loss of a legal right, remedy or interest, or the imposition of a liability." *Kohl*, 977 S.W.2d at 532.

This principle, *i.e.*, that the loss of a legal right, remedy or interest, constitutes legally cognizable harm which triggers the running of a statute of limitations has been repeatedly applied by Tennessee courts. *Smith v. Petkoff*, 919 S.W.2d 595 (Tenn.App.1995) is instructive. Attorney Petkoff was hired to prosecute a personal injury claim arising from an automobile accident. The accident occurred on October 7, 1987. Petkoff filed suit on March 16, 1988. Petkoff's complaint named Jones as a defendant. Petkoff decided not to name a third driver, Theos, as a defendant. The statute of limitations on a personal injury claim against Theos expired on October 7, 1988.

In a lawsuit against Petkoff, his former client alleged malpractice in Petkoff not having named Theos in the original lawsuit. The lawyer malpractice action was filed on April 30, 1993.

The Court of Appeals held that the claim against Petkoff was barred by the one year

statute of limitations in part because Petkoff's client had "suffered an 'actual injury' or a 'legally cognizable injury' on October 8, 1988 when the statute of limitations ran against Theos." *Smith v. Petkoff*, 919 S.W.2d at 597. In other words, Petkoff's client lost a legal right, *i.e.*, the right to file a personal injury action on October 8, 1988. On that date, Petkoff's client suffered a legally cognizable injury.

Similarly, Allied suffered a legally cognizable injury when waiver of the right to argue the "Held exclusion" issue occurred on January 3, 2011. From that point, there was no "going back." There was no way to resurrect the legal right to argue the matter as an issue for reversal on appeal.

> 2. Alternatively, Allied was harmed when its attorneys took
> actions and when Allied paid money (*i.e.*, attorney fees) which
> were necessitated by the "failure" to specify the "Held exclusion"
> issue as grounds in the motion for new trial.

Legally cognizable harm may occur not just through the loss of a legal right or remedy but also through "some actual inconvenience, such as incurring an expense, as a result of the defendant's [attorney's] negligence or wrongful act." *Kohl*, 977 S.W.2d at 532. Again, Tennessee case law in instructive and right on point.

*Cardiac Anesthesia Services, PLLC v. Jones*, 385 S.W.3d 530 (Tenn.App. 2012) cited and relied on the *Kohl* "actual inconvenience" and "incurring expenses" language in a case which is notably similar to Allied's. Cardiac Anesthesia Services ("CAS") filed a legal malpractice action against its former attorney Jones. The issue was whether the claim was time-barred.

CAS had entered into a contract with a hospital; Jones had negotiated and drafted the

14

contract. The contract, however, contained an allegedly invalid clause. The hospital filed suit against CAS. The hospital then moved for summary judgment on the ground that the contract which Jones, as the attorney for CAS had drafted, was invalid.

The trial court overruled the hospital's motion for summary judgment and held that the contract was valid. The appellate court reversed and found that the contract clause which Jones had drafted was illegal. CAS subsequently filed a legal malpractice action against Jones. Jones moved for summary judgment, asserting that the claim was time-barred. The trial court granted Jones' motion, and CAS appealed.

On appeal, CAS argued that it had not suffered an injury and did not know that it had suffered that injury until the appellate court issued its opinion overruling the trial court's determination about the contract. *Cardiac Anesthesia Services*, 385 S.W.3d at 540. The CAS argument was the same as that which Allied asserts, *i.e.*, the client did not suffer injury until such time as a court ruled on the issue which was created by the attorney's negligence. The Court of Appeals disagreed with CAS. *Cardiac Anesthesia Services*, 385 S.W.3d at 543.

The *Cardiac Anesthesia Services* court relied on *Kohl* and reiterated that entry of an adverse order is <u>not</u> necessary to demonstrate actual injury. Instead, suffering "some actual inconvenience, such as incurring expenses, as a result of the defendant's negligent acts" constitutes an injury under the discovery rule. *Cardiac Anesthesia Services*, 385 S.W.3d at 543. See also *Honeycutt v. Wilkes, McCullough & Wagner*, No. W2007-00185-COA-R3-CV, 2007 WL 2200285 at *8 (Tenn.Ct.App. August 2, 2007)(holding that incurring additional expenses by a client, as opposed to the entry of an order, constituted an actual injury for purposes of the discovery rule). The *Cardiac Anesthesia Services* court held simply "that the time and expense

15

of defending [the hospital's] motion for summary judgment argued on January 9, 2007, constituted an actual injury..." *Cardiac Anesthesia Services*, 385 S.W.3d at 543.

Like the clients in *Cardiac Anesthesia Services* and *Honeycutt*, Allied suffered an actual entry prior to entry of the judgment of the Court of Appeals. The waiver issue was created by the failure to include the "Held exclusion" issue in the motion for new trial. In other words, the negligence of Lewis King, according to Allied, created the waiver issue. And fighting the waiver issue cost Allied; that is to say it <u>harmed</u> Allied.

On August 29 and 30, 2011, Linda Mowles spent 14.2 hours researching the issue which, according to Allied, was created by the Lewis King and/or Weinberg Wheeler negligence. The 14.2 hours which Mowles spent were "time." The money which Allied eventually spent because of Mowles' August 29 and 30, 2001 efforts, *i.e.*, the payment by Allied to AIG on November 11, 2011, was "expense."

All of the elements of *Kohl*, *Cardiac Anesthesia Services*, and *Honeycutt* are met. Allied suffered legally cognizable harm at least as early as November 11, 2011.

> 3. Regardless whether harm occurred when waiver occurred (*i.e.*, when the "Held exclusion" issue was not included as grounds in the motion for new trial) or when Allied paid attorney's fees necessitated by not including the "Held exclusion" issue in the motion for new trial, Allied knew or reasonably should have known of the harm at least as early as September 23, 2011 when it was provided a copy of the Metro appellate brief which specifically and explicitly argued that the "Held exclusion" issue had been waived because it had not been included as grounds in the motion for new trial.

Allied had constructive knowledge of the facts underlying its claims of negligence against

16

Lewis King at least as early as September 23, 2011. On that date, its representatives Casey and Spruance possessed the Metro appellate brief which explicitly argued that the failure to raise the "Held exclusion" issue in the motion for new trial meant that the argument had been waived. Spruance testified that he did not read the brief but that, if he had, he would have known that Metro had argued waiver. Spruance, an attorney, understood waiver. Spruance, and thus Allied, cannot claim ignorance as an excuse.

A client is charged with a duty to exercise reasonable diligence to discover facts which would provide the basis for a claim of negligence. *Wilkins v. Dodson, Parker, Shipley & Behm*, 995 S.W.2d 569, 583 (Tenn.App.1998).

In *Wilkins*, a former client sued lawyers who had represented him in an underlying lawsuit which had been dismissed on statute of limitations grounds. The question was whether the client had suffered a legally cognizable injury as of the date when a statute of limitations issue was raised in his underlying lawsuit. In that underlying lawsuit, the defendant had specifically raised the statute of limitations as an affirmative defense. Wilkins had been supplied a copy of the answer which raised the statute of limitations, but he did not read the answer. He waited more than a year before suing his attorneys, and he claimed that he had not been put on notice of the statute of limitations issue because he had not bothered to read the answer which raised the issue.

> ...Wilkins knew or by the exercise of reasonable care and diligence,
> should have known about the alleged legal malpractice on July 12,
> 1991, when Third National Bank filed its answer in the underlying
> lawsuit asserting the defense of the statute of limitations.

> ***

17

> ...[Wilkins] received a copy of the bank's July 2, 1991 answer
> which raised as an affirmative defense that the underlying lawsuit
> was barred by the statute of limitations, and he was in attendance at
> the September 19, 1992 deposition of Joe Sadler at which the
> bank's answer was introduced as an exhibit. Therefore, we
> conclude that Wilkins should have known as early as July 12, 1991
> that Seaborg [his former attorney] may have committed legal
> malpractice by not filing the underlying lawsuit against the bank
> within the limitations. <u>Whether Wilkins actually read the answer is
> of no consequence to our determination as he is required to use
> reasonable care and diligence.</u>

*Wilkins*, 995 S.W.2d at 583 (Tenn.App.1998)(emphasis added).

Similarly, whether Casey and/or Spruance read the Metro brief which explicitly argued waiver is of no consequence to the issue of Allied's knowledge or notice. Allied was required to use reasonable care and diligence. Even assuming that it did not do so, it is constructively bound to know what it could and should have known.

> 4. Further, knowledge of waiver of the "Held exclusion" issue is
> imputed to Allied well in advance of March 20, 2012 because its
> attorneys, Weinberg Wheeler, were aware of the waiver issue
> having been raised when Weinberg Wheeler received the Metro
> appellate brief.

Weinberg Wheeler represented Allied, just as Lewis King did. Indeed, Weinberg Wheeler was the primary conduit for information during the appeal from Lewis King to Allied.

What an attorney knows a client is deemed to know. "Knowledge of facts learned by an attorney in the course of his employment will be imputed to his client." *Bellar v. Baptist Hospital, Inc.*, 559 S.W.2d 788 (Tenn.1978). In fact, in *Bellar*, the knowledge held by an attorney was sufficient to time-bar a claim asserted by the client when the client had no actual knowledge of the facts.

18

*Smith v. Petkoff*, 919 S.W.2d 595(Tenn.App.1995), establishes that a "person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney has not actually communicated his knowledge to the client is immaterial." *Smith v. Petkoff*, 919 S.W.2d 595, 597-598 (Tenn.App.1995). (Of course, Allied's attorneys at Lewis King did communicate their knowledge concerning the waiver issue to Allied by sending Allied actual copies of the Metro brief which raised the waiver issue.)

Even if Weinberg Wheeler did <u>not</u> communicate its knowledge concerning the waiver issue to Allied, that fact is immaterial. Weinberg Wheeler had the knowledge, and "constructive notice thereof to the client is conclusive and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired." *Smith v. Petkoff*, 919 S.W.2d at 597-598.

When Weinberg Wheeler received Metro's appellate brief, it knew that Metro was arguing that the "Held exclusion" issue had been waived because not raised in the motion for new trial which Weinberg Wheeler and Lewis King drafted and which Orr signed and filed. Therefore, it was at that time known to Allied. That conclusion is "conclusive and cannot be rebutted..." *Smith v. Petkoff*, 919 S.W.2d at 598.


II. LEWIS KING DID NOT CAUSE THE HARM WHICH ALLIED CLAIMS.

In its separate motion for summary judgment, Weinberg Wheeler has asserted as grounds the argument that Allied cannot prove the element of causation. This same argument benefits Lewis King, and Lewis King adopts by reference those portions of the Weinberg Wheeler argument which are pertinent to it.

Even if the Court of Appeals had considered the "Held exclusion" issue and had

19

determined it not to have been waived, the Court of Appeals would have determined that the trial court did not err on that issue and would not have granted relief to Allied. Weinberg Wheeler has explained why the Court of Appeals would not have found an abuse of discretion by the trial court in its ruling on the Held valuation opinion. Lewis King adopts that explanation by reference.

Weinberg Wheeler has explained in the brief which supports it separate motion for summary judgment why the trial court's exclusion of Held's valuation testimony was based on the correct legal standard and logical. Held's own deposition testimony in which he admitted that he was not a licensed real estate appraiser, had not performed an appraisal, and was not qualified to render expert valuation testimony precluded consideration of his opinion at trial. Lewis King adopts the explanation offered by Weinberg Wheeler by reference.

In its brief in support of its motion for summary judgment, Weinberg Wheeler has explained how and why a finding that its negligence was the cause of harm to Allied would be pure speculation. That same argument benefits Lewis King, and Lewis King adopts that argument by reference. Essentially, it would be folly and undue speculation for any person to assert that the Tennessee Court of Appeals necessarily would have granted relief to Allied had it considered the "Held exclusion" issue.

Finally, Weinberg Wheeler has explained in its brief in support of its motion for summary judgment how and why, given the terms of Allied's insurance coverage, damages which were stipulated by Allied at trial, and attorney's fees incurred by Allied through trial of the underlying case, Allied would not have benefitted even if the "Held exclusion" issue had been considered by the Court of Appeals and had been the basis for relief for Allied. That same argument benefits

20

Lewis King, and Lewis King adopts that argument by reference.

CONCLUSION

For any or all of the reasons detailed above, Lewis King is entitled to judgment as a matter of law.  Its motion for summary judgment should be granted.

_/s/ Darrell G. Townsend_
**DARRELL G. TOWNSEND, #5460**
**HOWELL & FISHER, PLLC**
Court Square Building
300 James Robertson Parkway
Nashville, Tennessee 37201-1107
(615) 244-3370
_Attorneys for Defendants Lewis, King, Krieg_
_& Waldrop, P.C., Linda Hamilton Mowles_
_and Deborah Stevens_

21

**CERTIFICATE OF SERVICE**

I certify that on October 27, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By Electronic Filing System:

James W. White
The Jones Law Firm, PLC
One Nashville Place, Suite 1820
150 4th Avenue North
Nashville, TN 37219
jwhite@joneslawfirmplc.com

Douglas C. Northrup
Fennemore Craig, P.C.
2394 East Camelback Road, Suite 600
Phoenix, AZ 85016
dnorthrup@fclaw.com

Darryl G. Lowe
Lowe & Yeager
900 So. Gay Street, Suite 1950
Riverview Towers
Knoxville, TN 37902-1810
dgl@lyblaw.net

David B. Scott
Ortale, Kelley, Herbert & Crawford
P.O. Box 198985
200 Fourth Avenue North, Third Floor
Nashville, TN 37219-8985
dscott@ortalekelley.com

/s/    Darrell G. Townsend
**DARRELL G. TOWNSEND**