## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION

| | |
|---|---|
| ALLIED WASTE NORTH AMERICA, INC., a Delaware Corporation; and BFI WASTE SERVICES, LLC, a Delaware Limited Liability Company, | ) ) ) ) |
| | )     JURY DEMAND |
| Plaintiffs, | ) |
| v. | )     NO. 3:13-cv-00254 |
| | ) |
| LEWIS, KING, KRIEG & WALDROP, P.C., a Tennessee Professional Corporation, LINDA HAMILTON MOWLES, an Individual, DEBORAH STEVENS, an Individual, LEVINE, ORR & GERACIOTI, PLLC, a Tennessee Limited Liability Company, ROBERT ORR, JR., an Individual, WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC, a Georgia Limited Liability Company, and TERRANCE SULLIVAN, an Individual. | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | )     Judge Sharp |
| |     Magistrate Judge Griffin |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, TERRANCE SULLIVAN AND WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

Defendants, Terrance Sullivan and Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC (collectively "Weinberg Wheeler"), by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, submit this Memorandum of Law in support of their Motion for Summary Judgment. Plaintiffs, Allied Waste North America, Inc. and BFI Waste Services, LLC (collectively "Allied"), failed to commence this lawsuit prior to the expiration of the one-year statute of limitations.[1] For this reason alone, Allied's lawsuit should be dismissed with prejudice.

---

[1] The record also refers to Republic. For the purposes of the Plaintiffs' claim and Weinberg Wheeler's defense, there is no distinction between Republic and Allied.

However, the undisputed facts also demonstrate that Weinberg Wheeler did not cause a result that would not have otherwise occurred, and Allied cannot establish the necessary element of causation. Finally, the undisputed facts demonstrate that Allied cannot prove that Weinberg Wheeler breached the standard of care.

For these reasons, this Court should enter judgment in favor of Weinberg Wheeler as a matter of law.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This is a legal malpractice lawsuit involving three law firms, all of whom provided a legal defense to Allied at various stages in the underlying lawsuit. These stages consisted of a jury trial, post-trial motions, and an appeal. It is undisputed that Weinberg Wheeler had no involvement in the underlying lawsuit prior to the jury verdict awarding a 7.2 million dollar judgment against Allied. And while Weinberg Wheeler provided unrelated services to Allied during the appeal phase, it is undisputed that Weinberg Wheeler did not participate in either drafting or arguing the appeal.

Instead, Weinberg Wheeler is being sued by Allied for exercising professional judgment on how best to salvage Allied's defense to a 7.2 million verdict.

Each of Allied's three claims against Weinberg Wheeler arise from allegations regarding its involvement in the preparation of a Motion For New Trial and For Judgment Notwithstanding the Verdict ("Motion for New Trial").[2] Allied contends that the Motion for New Trial waived appealable issues and that the waiver was the result of Weinberg Wheeler's breach of the

---

[2] Allied's Amended Complaint alleges three separate claims against Weinberg Wheeler: (1) Breach of Contract; (2) Breach of Fiduciary Duty; and (3) legal negligence. The Amended Complaint fails to identify facts distinguishing these claims.

standard of care. However, Weinberg Wheeler did not waive anything. After reviewing the record and Allied's file from trial counsel, Weinberg Wheeler determined what issues would present the best defense for Allied going forward and what issues were simply meritless. More than a week before the argument of the Motion for New Trial before the trial judge, Allied's counsel, Allied's insurer, and Allied itself knew what issues had been raised and what issues had not.

The trial court denied the motion for new trial, and Lewis, King, Krieg & Waldrop, P.C., Deborah Stevens, and Linda Mowles ("Lewis King") appealed. The principal appellate brief raised issues that were not included in the Motion for New Trial, and the Court of Appeals determined that these issues were waived. However, prior to the Court of Appeals' opinion and more than one year before commencing this lawsuit, Allied knew or should have known that issues had been raised for the first time on appeal. Allied also knew that the consequence of raising issues for the first time on appeal would be waiver.

As a result, the statute of limitations expired prior to Allied's commencement of this lawsuit. By the close of the appellate briefing schedule, Allied knew or should have known of all facts demonstrating that it suffered a legally cognizable injury caused by the conduct of Lewis King. Therefore, the filing of the Court of Appeals opinion on March 22, 2012 was not the accrual date for the cause of action against Lewis King, and Allied failed to commence its claim against the original defendant within the statute of limitations. This precludes Allied from commencing its claim against Weinberg Wheeler in reliance on the savings statute at Tenn. Code Ann. § 20-1-119, and Weinberg Wheeler must be dismissed as a matter of law.

3

Allied cannot establish Weinberg Wheeler committed malpractice as a matter of law. Weinberg Wheeler exercised legal judgment by determining the best issues to include in the Motion for New Trial. The alleged failure to include other issues did not cause any damage to Allied that would not otherwise have occurred. More specifically, the issues Weinberg Wheeler did not include were not supported by the record and could never form the basis for the trial court to reverse its earlier decision. Even if Allied argues that the trial court could have reversed its earlier decision based on the inclusion of the alleged waived issues, such an argument leads only to speculation as to the outcome, which cannot be overcome because the trial court maintains wide discretion in ruling on evidentiary issues and the undisputed facts present viable reasons for the trial court to affirm its earlier decision. In addition, a new trial would have been subject to stipulated damages that exceeded the amount of Allied's deductible irrespective of any ruling on the alleged waived issues. These reasons, and the undisputed facts that support them, entitle Allied to judgment as a matter of law.

Finally, Allied cannot establish breach of the standard of care. Tennessee law provides that attorneys exercising sound legal judgment on issues that have not been resolved by the state's highest court are not liable. Weinberg Wheeler should not be liable for exercising its legal judgment with respect to these issues.

## **STATEMENT OF FACTS**

Solely for the limited purpose of summary judgment, Weinberg Wheeler does not dispute the following facts.

**1.      The undisputed facts regarding the trial of the underlying lawsuit.**

4

On May 23, 2002, a fire destroyed a waste-to-energy facility (the "facility") owned by the Metropolitan Government of Nashville and Davidson County ("Metro"). (Amended Complaint, Doc. 12, ¶¶ 14, 15, PageID#44). The facility incinerated waste. Allied had a contract with Metro to remove excess waste from the facility. Allegedly, the tailpipe of one of Allied's vehicles ignited this excess waste, which in turn caused the fire.

Metro and its insurer, Travelers Insurance Company ("Travelers"), commenced the underlying lawsuit against Allied, and other defendants. Levine, Orr, & Geracioti, PLLC ("Levine Orr") was retained to defend Allied. (Amended Complaint, Doc. 12, ¶ 16, PageID#44). Metro and Travelers, as subrogee, requested the following damages: (1) business losses; (2) the cost of repairing damage to the facility; and (3) repair cost for damaged cranes.

Metro planned to discontinue operations at the facility, and, in addition to other defenses, Levine Orr attempted to introduce evidence of this "pre-fire plan" to show that the facility had a negligible value at the time of the fire. Levine Orr attempted to introduce these plans through the testimony of an individual named Jonathan Held. (Ex. A, LOG_0027907-08). Held is the president of J.S. Held Incorporated "a well-recognized construction consulting firm whose work typically includes inspection of damaged buildings, determination of means, methods and cost of repair, estimating cost of the work monitoring job site progress and determination of Actual Cash Value." (Ex. A, LOG_0027918). His report included an opinion that the facility had a negligible value because it was substantially obsolete at the time of the loss. (Ex. A, LOG_0027907). According to Held, the facility's obsolescence was due to the pre-fire plan, developed before the fire, to demolish and discontinue operating the facility. (Ex. A, LOG_0027907-08). As a result of

5

the pre-fire plan, Held believed that the facility had a negligible value prior to the fire. (Ex. A, LOG_0027907-08).

However, with respect to market value, Held admitted he was not a real estate appraiser, he was not licensed to be a real estate appraiser, he did not conduct an appraisal of the facility either before or after the fire, and he was not qualified to conduct a valuation of the facility before and after the fire. (Ex. B, 0000002709).

Metro filed two motions to exclude Held from offering an opinion about the before and after value of the facility. In its Supplemental Motion to Strike Certain Opinions of Jonathan C. Held, Metro Nashville identified three reasons for excluding the opinion: (1) Held could not offer an appraisal of the facility because he was not a licensed appraiser; (2) Held admitted he was not qualified to give an opinion on the value of the facility before and after the fire; and (3) Held's methodology was unreliable because he did not undertake an independent analysis of the facility's value before the fire. (Ex. B). In its Motion in *Limine*, Metro argued that the pre-fire plans were irrelevant to liability and damages. (Ex. C, LOG_0000225-26). Specifically, Metro included legal authority establishing that damage to real property is proven by evidence of before and after valuation or by evidence of the cost to repair. (Ex. C, LOG_0000226-27). Metro Nashville also included significant legal authority supporting its conclusion that the pre-fire plans to demolish the facility were irrelevant to the issue of damages. (Ex. C, LOG_0000227-30). Finally, Metro Nashville argued that the prejudicial effect of the pre-fire plans substantially outweighed their probative value, and they should be excluded pursuant to Tenn. R. Evid. 403. (Ex. C, LOG_000030).

6

The trial court granted the motions on September 9, 2010. (Ex. D, LOG_0010849-854) (the "September 9 Order"). It found that Held was not qualified to give an opinion about the value of the facility. (Ex. D, LOG_0010849-850). It also found that Held's opinion should be excluded under Tenn. R. Evid. 403. (Ex. D, LOG_0010850). It found that the pre-fire plans were irrelevant. (Ex. D, LOG_0010850). It found that the proper measure of damages was the reasonable cost of repair, which also meant that pre-fire plans were irrelevant. (Ex. D, LOG_0010850). It found that Allied failed to offer competent proof of the facility's value, and the trial court excluded Held's opinions on the before and after value of the facility and the facility's negative or negligible value before the fire. (Ex. D, LOG_0010850). Importantly, the trial court did not exclude Mr. Held on the basis that Tenn. Code Ann. 62-39-103(a) precluded him from offering an opinion due to his lack of an appraisal license. Moreover, the trial court did not exclude Held's opinion regarding the cost of repair. (Ex. D). However, Levine Orr did not secure evidence other than Jonathan Held to rebut Metro Nashville's evidence of cost of repair. (Amended Complaint, Doc. 12, ¶¶ 25-26, p. 46).

The Court's order also excluded testimony from Harvey Gershman regarding what it would cost to demolish the facility based on its pre-fire condition. (Ex. D).

Following the September 9 Order, Lewis King was hired to monitor the trial and to identify and preserve issues for appeal. (Amended Complaint, Doc. 12, ¶ 31, p. 47) (Ex. E, Depo. of Mowles, p. 15) (Ex. F, Depo. of Spruance, p. 164-65). Allied's insurer requested Lewis King send daily trial reports with copies sent to Michele Casey, an Allied employee. (Ex, G, REPUBLIC002121). On September 30, 2010, Deborah Stevens with Lewis King sent Michele Casey a detailed email that identified the opinion of Held and evidence of the pre-fire plans as

7

issues of appeal. (Ex. H, REPUBLIC002161). Following that email, Ms. Mowles, also with Lewis King, praised Ms. Stevens for her analysis and stated that, "we need to be sure that these issues are included in a motion for new trial since we will not be able to raise them in a jury trial appeal unless we have gone the new trial motion route." (Ex. I, LEWISKING_REPBULIC000345).

Also prior to trial, Levine Orr stipulated to the following measure of damages: business loss suffered by Metro in the amount of $2,399,057 and the replacement cost of cranes destroyed by the fire in the amount of $1,528,000. (Ex. J, 0000002459). Levine Orr did not present evidence contesting Metro's evidence of the repair cost of the facility.

The lawsuit was tried and a verdict against Allied was returned on October 5, 2010 in the amount of 7.2 million. (Amended Complaint, Doc. 12, ¶ 28, p. 46).

**2.      The undisputed facts regarding the motion for new trial.**

Weinberg Wheeler was retained after the verdict. The scope of representation for Weinberg Wheeler involved "preparing post-verdict offers of proof to address the evidentiary exclusions made by the trial court, the appropriate post-trial motions, and preparation for potentially retrying the case if the post-trial motions were ultimately successful." (Amended Complaint, Doc. 12, ¶ 32, p. 47). Initially, Weinberg Wheeler filed motions to allow Allied to make post-trial offers of proof. The trial court granted Weinberg Wheeler's motion with respect to the testimony of J.S. Held, and his deposition was entered into the record for the offer of proof. However, because Levine Orr did not make the other offers of proof prior to the verdict, the trial court denied the remaining offers of proof requested by Weinberg Wheeler, including that of Harvey Gershman.

8

Linda Mowles with Lewis King prepared the Motion for New Trial. (Ex. E, pp. 140-42; Ex. K). This Motion identified the following issues for appeal.

A. The Adverse Inference Jury Instruction Arising from the Court's Decision to Sanction BFI for Alleged Discovery Violations Clearly Outweighs the Offense Committed, Improperly Punishes BFI for an Offense Beyond its Control and Allowed the Jury to Draw an Inference that Contradicts Existing Evidence

B. Plaintiffs Failed to Produce an Essential Element Of Their Cause Because Although BFI's Duties Arose Under Contract, No Contractual Duties Were Introduced Into Evidence At Trial; Indeed, Metro Never Introduced Any Evidence Establishing Duties Owed By BFI

C. The Jury Instruction As To The Determination Of The Value Of Loss Was Inconsistent With Tennessee Law And Defendants Should Have Been Permitted to Introduce Evidence of The Pre–Loss Plan for Nashville Thermal

D. The Court Must Allow BFI the Opportunity to Present Offers of Proof on Those Evidentiary Matters Subject to The Court's September 20, 2010 Order Limiting BFI's Presentation of Evidence

E. The Verdict Was Excessive, Against the Weight Of the Evidence and Contrary To Principles of Justice

*Metro. Gov't of Nashville & Davidson Cnty. v. BFI Waste Servs., LLC*, 2012 WL 1018946, * 5-6 (Tenn. Ct. App. Mar. 22, 2012); (Ex. K, WEI025199). Weinberg Wheeler prepared the Memorandum of Law in Support of this Motion with input from Lewis King. Both were filed on January 3, 2011. (Amended Complaint, Doc. 12, ¶ 34, PageID#47). On January 20, 2011, Weinberg Wheeler emailed the Motion for New Trial and its Memorandum of Law to Michele Casey and Dave Spruance. (Ex. L, REPBULIC000371). Later that day, Dave Spruance responded by saying, "Very well written; I have read many briefs over the years (and even prepared a few myself) and this one was clear, concise and well-supported." (Ex. M, REPUBLIC004105).

The trial court denied the Motion for New Trial. (Amended Complaint, Doc. 12, ¶ 35, PageID#48). It also denied Metro's request for pre-judgment interest.

9

**3.      The undisputed facts regarding the appeal.**

The Lewis King Defendants filed a notice of appeal for Allied on March 9, 2011. (Amended Complaint, Doc. 12, ¶ 36, p. 48). Lewis King presented the following issues for appeal:

(1) Whether the trial court erred in excluding evidence regarding; (1) the value of the facility at the time of the fire; (2) the facility's pre-fire condition; and (3) the future plans for the facility;
(2) Whether the trial court allowed all properly preserved offers of proof;
(3) Whether the trial court erred in charging only the reasonable cost to repair as damages; and
(4) Whether the trial court erred in ordering an adverse inference jury instruction.[3]

*Metropolitan Gov't of Nashville and Davidson County v. BFI Waste Services, LLC*, 2012 WL 1018946, *2 (Tenn. Ct. App. March 22, 2012). Metro responded by arguing, *inter alia*, that Allied waived its opportunity to argue on appeal that the trial court improperly excluded the real estate valuation opinions from construction expert Jonathan Held. (Ex. N, REPUBLIC000713, 725). Metro also argued that Allied failed to preserve for appeal the issue of the trial court's exclusion of demolition cost testimony from Harvey Gershman. (Ex. N, REPUBLIC000744).

After receiving Metro's Appellee Brief, Linda Mowles conducted fourteen hours of research regarding waiver between August 29 and August 31, 2011. (Ex. O, LEWIS_KING000440). Lewis King then prepared a Reply Brief addressing Metro's argument regarding waiver of the Held issue. (Ex. P, WEI031792). It also responded to Metro's argument that Allied failed to preserve the issue of Metro's future plans for the facility. (Ex. P, WEI031796-97).

---

[3] This is a quote of the Court of Appeals' summary of the issues presented by Lewis King.

Lewis King sent its bills to AIG who invoiced a prorated share of the bill to Allied. (Ex. F, pp. 200-203). The documents provided by Allied show that it processed Lewis King's bills for the research regarding waiver and for the reply brief on September 30, 2011. (Ex. Q, REPUBLIC004990).

**4.      Allied learns additional facts regarding waiver.**

On September 23, 2011, Linda Mowles emailed Metro's Appellee Brief to Michele Casey at Allied. (Ex. N, REPUBLIC000703-776). Shortly afterward, Michele Casey forwarded Metro's Appellee Brief to Dave Spruance at Allied. (Ex. N, REPUBLIC000703-776). Also on September 23, 2011, Linda Mowles emailed Allied's Reply Brief to Michele Casey. (Ex. P. REPUBLIC001217). Dave Spruance received Metro's Appellee Brief. (Ex. F, p. 100-101). He had the opportunity to review the Appellee Brief. (Ex. F, p. 102). He agrees that had he reviewed the brief he would have seen that one of the arguments made by Metro in the Court of Appeals was that Allied failed to preserve Appellate consideration of the exclusion of Jonathan Held's real estate valuation opinions. (Ex. F, p. 102). As a former attorney, Mr. Spruance knew at the time he received the brief that waiver means "[t]hat somebody either actively, proactively, or in the absence of a statement waives their rights…." (Ex. F, p. 103). As a result, on September 23, 2011, Mr. Spruance had the opportunity to know that Metro took the position that Allied waived an issue for appellate consideration. (Ex. F, p. 104).

On March 22, 2012, the Court of Appeals handed down its opinion and found that Allied waived the same issues that Metro argued had been waived. *Metropolitan Gov't of Nashville and Davidson County v. BFI Waste Services, LLC*, 2012 WL 1018946 (Tenn. Ct. App. March 22, 2012).

11

First, the Court of Appeals found that Allied failed to properly preserve the exclusion of Held's valuation opinion "by failing to raise the issue in their motion for new trial." *Metropolitan Gov't of Nashville and Davidson County v. BFI Waste Services, LLC*, 2012 WL 1018946, *4 (Tenn. Ct. App. March 22, 2012). Metro identified this waiver in its statement of issues as "Whether BFI/Allied waived appellate consideration of the trial court's exclusion of real estate valuation opinions from construction expert Jonathan Held." (Ex. N, REPUBLIC000713). Metro also mentioned this waiver in its summary of the argument: "BFI/Allied's primary point of contention centers around the trial court's exclusion of Held's real estate valuation opinions. This point was waived when BFI/Allied failed to raise it in its Motion for New Trial." (Ex. N, REPUBLIC000725). Metro's brief then dedicated an additional one and one half page to this argument of waiver. (Ex. N, REPUBLIC000727-728).

Second, the Court of Appeals then noted that the Motion for New Trial failed to challenge the exclusion of evidence of the pre-fire condition of the facility or evidence related to demolition costs, *Id.* at * 7. Metro dedicated nearly one page to arguing that Allied failed to preserve for appeal the issue of the trial court's exclusion of demolition cost testimony from Harvey Gershman. (Ex. N, REPUBLIC000744).

The Court of Appeals affirmed the trial court. *Id.*

**5.     Procedural Background relevant to the statute of limitations.**

Allied filed its Complaint naming the Lewis King Defendants *only* on March 20, 2013. (Complaint, Doc. 1). In the Complaint, Allied identified the entry of the Court of Appeals' opinion on March 22, 2012 as the date when "Allied learned, or could have reasonably

12

discovered, that Defendant had actually failed to do exactly what Allied had retained them to do." (Complaint, Doc. 1, ¶ 22, pp. 4-5).

In their Answer, the Lewis King Defendants alleged the affirmative defense of comparative fault and identified Terrence Sullivan and the law firm of Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC as at fault parties. (Answer, Doc. 8, pp. 32-33).

On May 13, 2013, Allied filed its First Amended Complaint, which named Terrence Sullivan, Scott Witzigreuter, and the law firm of Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC as defendants. (First Amended Complaint, Doc. 12). The First Amended Complaint repeated the allegation identifying March 22, 2012 as the accrual date for the statute of limitations. (First Amended Complaint, Doc. 12, ¶ 40, pp. 48-49).

## LEGAL STANDARD ON SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment if "the pleadings, depositions, answers to interrogatories, and all submitted affidavits indicate that there is no genuine issue as to any material fact and demonstrate that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 323 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir.

13

1998). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When, as here, the resolution of a claim turns on a question of law, summary judgment is particularly appropriate. *Finnell v. Cramet, Inc.*, 289 F.2d 409, 414 (6th Cir. 1961).

## LAW AND ARGUMENT

**I.      The statute of limitations bars Allied's lawsuit.**

The relevant dates for Metro's failure to comply with the one year statute of limitations are as follows:

1.      March 20, 2013 – Allied files a complaint for legal malpractice against Lewis King *only*.

2.      March 22, 2012 – The Court of Appeals enters an opinion affirming the trial court's denial of a motion for new trial and raising the issues of waiver. *Metropolitan Gov't of Nashville and Davidson County v. BFI Waste Services, LLC*, 2012 WL 1018946 (Tenn. Ct. App. March 22, 2012). Allied contends this was the first date that it could have known about waiver. However, the allegedly waived issues were previously identified in Metro's Appellee Brief and Allied's Reply Brief.

3.      September 30, 2011 – Allied processes a bill from Lewis King that includes partial payment for research and writing on the issue of waiver.

4.      September 23, 2011 – Allied receives Metro's Appellee Brief and Allied's Reply Brief from Linda Mowles. Both briefs argue over whether Allied waived the Held issue.

5.      January 20, 2011 – Allied receives the Motion and Memorandum for New Trial. Dave Spruance responds that it was "[v]ery well written." The issues in the Motion are clearly identified.

Based on this undisputed timeline and the legal authority, Allied failed to commence its lawsuit within the statute of limitations, and Weinberg Wheeler is entitled to judgment as a matter of law.

**A.      The statute of limitations for the Plaintiffs' claim is one year from the date the Plaintiffs' cause of action accrued because of the language of Tenn. Code**

14

**Ann. § 28-3-104(a)(2) and because legal negligence is the gravamen of the first amended complaint.**

Though the Plaintiffs have alleged three causes of action against all Defendants, all three claims are limited by the one-year statute of limitations set forth at Tenn. Code Ann. § 28-3-104(a)(2).[4] Tenn. Code Ann. § 28-3-104(a)(2) creates a statute of limitations of one year "after the cause of action accrued" for "actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort." Each of the Plaintiffs' three causes of action arose from alleged acts and omissions by the Defendants in their capacities as attorneys. (First Amended Complaint, Doc. 12, ¶¶ 32 -33, 40, 43, 44, pp. 47-50). As a result, regardless of how the Plaintiffs characterize the claims (breach of contract or breach of fiduciary duty) against the Defendants, the gravamen of the complaint is legal malpractice, and "[i]n Tennessee the applicable statute of limitations is determined according to the gravamen of the complaint rather than its designation as an action for tort or contract." *Keller v. Colgems-EMI Music, Inc.*, 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996) (citing *Pera v. Kroger*, 674 S.W.2d 715, 719 (Tenn. 1984)).[5]

**B.    Because the statute of limitations expired prior to the Plaintiffs' commencing a lawsuit against Lewis King, the Plaintiffs' claim against Weinberg Wheeler is also barred by the statute of limitations.**

---

[4] This section of Tenn. Code Ann. § 28-3-104 was in effect when this lawsuit was commenced. As of July 1, 2014, it is now found at Tenn. Code Ann. § 28-3-104(c)(1).

[5] This Court exercises subject matter jurisdiction over this lawsuit pursuant to diversity and 28 U.S.C. 1332(a). (First Amended Complaint, Doc. 12, ¶ 12, p. 44). Tennessee substantive law applies. "It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (Stevens, J., concurring in part) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

15

When Allied commenced its lawsuit against Weinberg Wheeler in May 13, 2013, it did so beyond the statute of limitations, notwithstanding any applicable exception. Allied's Complaint and First Amended Complaint identified March 22, 2012 as the date when it learned that issues had not been preserved for appeal. (First Amended Complaint, Doc. 12, ¶ 40, pp. 48-49). Thus, Allied's cause of action against Weinberg Wheeler is timely only if Tenn. Code Ann. § 20-1-119 applies.

### 1. To rely on Tenn. Code Ann. § 20-1-119, Allied must have commenced an action against the original defendants, Lewis King, within the applicable statute of limitations.

As an exception to the statute of limitations, Tenn. Code Ann. § 20-1-119(a) is only available to a plaintiff who commences a lawsuit against the original defendant within the statute of limitations. When an original defendant asserts comparative fault against a non-party beyond the statute of limitations applicable to the non-party, this statute creates an exception to the statute of limitations. The statute states, in pertinent part,

> (a) In civil actions where comparative fault is or becomes an issue, **if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations,** or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint **that a person not a party to the suit caused or contributed to the injury or damage** for which plaintiff seeks recovery, and if the plaintiff's cause of action or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer that person's fault …
> (1) Amend the complaint to add the person as a defendant pursuant to Tenn. R. Civ. P. 15 and cause process to be issued for that person.

Tenn. Code Ann. § 20-1-119(a)(1) (emphasis added). According to the Plaintiffs' unopposed Motion to Continue the Case Management Conference, this statute applies because "[Lewis King

16

has] named non-parties who were allegedly at-fault in causing plaintiffs' damages." (Motion, Doc. 9, PageID# 35).

The statute must be applied as written, and the window of opportunity to add a defendant after the statute of limitations is limited to the circumstances specified in the statute. *Shaffer v. Memphis Airport Auth., Serv. Mgmt. Sys., Inc.*, 2013 WL 209309, * 8 (Tenn. Ct. App. Jan. 18, 2013). As it applies to this case, the statute is only triggered by "a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations...." Tenn. Code Ann. § 20-1-119(a)(1). Lewis King was the only defendant named in the Plaintiffs' original complaint, and Lewis King's allegation of comparative fault only triggers the statute if the Plaintiffs' suit against Lewis King was "filed within the applicable statute of limitations." *Id.*

> **2.  Allied cannot rely on Tenn. Code Ann. § 20-1-119 because the Plaintiffs' cause of action against Weinberg Wheeler and Lewis King accrued before March 20, 2012.**

To determine when the cause of action accrues, this Court must apply the discovery rule.[6] Accordingly, the cause of action accrues "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1977)). Determining this date requires the consideration of two elements: (1) the plaintiff must suffer legally cognizable damage due to the defendant's conduct; and (2) the plaintiff must have actual or constructive knowledge that the

---

[6] As previously discussed, the applicable statute of limitations is one year from the date the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(2).

injury occurred as a result of the defendant's conduct. *Kohl*, 977 S.W.2d at 532 (citing *Carvell v. Bottom*, 900 S.W.2d 23, 28-30 (Tenn. 1995)).

> a.  Allied's alleged damages occurred before the Court of Appeals' opinion when Allied lost the right to make legal arguments.

Allied suffered two types of legally cognizable injuries prior to March 20, 2012, one year prior to the filing of the Complaint. First, Allied paid a portion of the legal fees incurred for researching and responding to Metro Nashville's appellate arguments regarding waiver. Second, Allied lost the right to legal arguments due to alleged waiver.[7]

The standard for finding a legally cognizable damage is low. In *Kohl*, the Tennessee Supreme Court explained that the phrase "legally cognizable damage" is broad enough to include not only the "loss of a legal right, remedy or interest, or the imposition of a liability" but also "some actual inconvenience, such as incurring an expense, as a result of the defendant's negligence or wrongful act." *Id.* (citing *State v. McClellan*, 85 S.W. 267, 270 (Tenn. 1905)).

In 2012, the Tennessee Court of Appeals held that merely defending against a motion for summary judgment was an "actual inconvenience," whether it resulted in attorney fees or not. *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 541-42 (Tenn. Ct. App. 2012). In *Jones*, the Court of Appeals referred to multiple examples of a legally cognizable injury including: answering a complaint, receiving a judgment of an inaccurate amount, and defending against an IRS investigation. *Id.* at 541-43. These examples demonstrate that incurring attorney fees due to alleged malpractice can trigger the statute of limitations regardless of whether alleged malpractice resulted in an adverse court order.

---

[7] For the sole purpose of this argument, Weinberg Wheeler assumes that Allied can establish the allegations of waiver.

Allied incurred legal fees, and thus an "actual inconvenience," due to the fourteen hours Linda Mowles spent researching waiver in response to the arguments in Metro's Appellee Brief and due to the time Ms. Mowles spent responding to these arguments in the Reply Brief. (Ex. O, LEWIS_KING000440); (Ex. P, WEI031792). These fees were incurred prior to March 20, 2012, and as a result a legally cognizable injury to Allied existed more than a year before Allied filed the Complaint.

Regardless of the fees, Allied incurred a legally cognizable damage due to the alleged waiver of a legal right to make arguments. The loss of this right was not conditioned upon the Court of Appeals' opinion. In fact, a "legally cognizable injury" may occur without a court order. For example, in *Smith v. Petkoff*, 919 S.W.2d 595, 597 (Tenn. Ct. App. 1995), the Court of Appeals found that a "legally cognizable injury" occurred *when the statute of limitations expired*. Notably, the court did not condition the existence of an injury on a court order confirming the expiration of the statute of limitations.

According to Allied, waiver occurred when issues were not raised in the Motion for New Trial. At this point, according to Allied, the issues had been waived, and the arguments could not be effectively raised on appeal. Tenn. R. App. P. 3(e). Thus, Allied suffered a "legally cognizable damage" because it lost the right to arguments on appeal. However, Allied also suffered a "legally cognizable damage" when Lewis King prepared a principal brief that relied on allegedly waived arguments. Thus, contrary to Allied's position, the "legally cognizable injury" occurred either at the Motion for New Trial or the Appellant's principal brief. In either event, the waiver occurred prior to the Court of Appeals' opinion and prior to March 20, 2012.

19

For these reasons, the undisputed facts affirmatively establish under the discovery rule that a legally cognizable damage occurred prior to the entry of the Court of Appeals' opinion on March 22, 2012.

> b.   Allied had actual or constructive knowledge of the legally cognizable damage before March 20, 2012.

The undisputed facts establish that Allied had constructive knowledge that the injury occurred as a result of Lewis King's conduct as a result of: (1) the bill for services; (2) the appellee brief it received on September 23, 2011; and (3) Allied's attorney/client relationship with Lewis King. For these reasons, as established by the undisputed facts, Allied knew of its claims at least six months before March 20, 2012, and Allied failed to commence the lawsuit against the Lewis King Defendants within the statute of limitations.

The undisputed facts confirm that Allied had constructive knowledge about the arguments of waiver on September 23, 2011 when it received a copy of the appellee brief and the reply brief. (Ex. N, REPUBLIC000703-776). Mr. Spruance testified that he did not read the briefs, but if he had he would have seen that waiver was an argument of Metro. (Ex. F, p. 102). Mr. Spruance cannot defeat constructive knowledge by denying that he read the brief. A client is charged with the duty of exercising reasonable diligence to discover the existence of facts constituting negligence by an attorney and the injury caused by the negligence. *Wilkins*, 995 S.W.2d at 583 (citations omitted). For example, in *Wilkins*, the malpractice plaintiff testified that he did not pay attention to the answer in the underlying case where the statute of limitations was first raised. *Id*. at 582. The Court of Appeals determined that "[w]hether [the plaintiff] actually read the answer is of no consequence to our determination as he is required to use reasonable care and diligence." *Id*. at 583 (citing *Carvell*, 900 S.W.2d at 28)).

20

Allied's employees David Spruance, an attorney, and Michele Casey received the appellee brief and the reply brief on the same day, September 23, 2011, and in the exercise of reasonable care and diligence should have known that the legal arguments identified in the appellee brief had been waived. (Ex. N, REPUBLIC000703-776). Waiver is identified as the first issue in the appellee brief. (Ex. N, REPUBLIC000713). In the appellee brief's statement of the case, Metro Nashville makes the following argument:

> The Motion for New Trial failed to raise issues of alleged error included in BFI/Allied's Appellant Brief, including the trial court's allegedly erroneous exclusion of Mr. Held's valuation opinions and the alleged erroneous exclusion of certain testimony from Harvey Gershman. T.R. Vol. XVI, p. 2224. These issues are not properly before this Court and should be deemed waived.

(Ex. N, REPUBLIC000717). These are only two examples of Metro Nashville's clearly stated arguments regarding waiver. These arguments permeate the entire brief, and provide unequivocal evidence that waiver, an argument not previously made at any point in the proceedings, occurred. At this point, on September 23, 2011, Allied knew or should have known in the exercise of reasonable care that the legal arguments for new trial had been waived as a result of Lewis King. However, if there was any question about the effect of waiver, it should have been clear to Allied when it received Lewis King's bill for researching waiver and preparing a reply brief that addressed the waiver. (Ex. Q, REPUBLIC004990). This triggered the statute of limitations, and Allied's failure to commence the lawsuit against the Lewis King Defendants until March 20, 2013 bars the claims against the Weinberg Wheeler Defendants as a matter of law.

Notwithstanding Allied's exercise of reasonable care to read and understand the issues raised in the Appellee Brief, the knowledge of the waiver and its cause is imputed to Allied as a result of its attorney/client relationship with Lewis King. The law is clear that the attorney is the

21

agent for the client, and "[a] client is implied to have notice of facts transmitted to his attorney in the matter and course of his employment for such client." *Wilkins v. Dodson, Parker, Shipley, Behm & Seaborg*, 995 S.W.2d 575, 584 (Tenn. Ct. App. 1998) (quoting *Roberts v. State*, 546 S.W.2d 264, 265 (Tenn. Crim. App. 1977)). It is well settled that "[k]nowledge of facts learned by an attorney in the course of his [or her] employment will be imputed to his client." *Bellar v. Baptist Hosp., Inc.,* 559 S.W.2d at 789; *see Neilson v. Weber,* 107 Tenn. at 165, 64 S.W. at 21. A "person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney has not actually communicated his knowledge to the client is immaterial." *Smith v. Petkoff,* 919 S.W.2d 595, 597–98 (Tenn.Ct.App.1995); *accord Lane– Detman, L.L.C. v. Miller & Martin,* 82 S.W.3d 284, 296 (Tenn.Ct.App.2002). Once it has been established that the attorney obtained the relevant knowledge during the course of representing the client, "the constructive notice thereof to the client is conclusive, and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired." *Smith v. Petkoff,* 919 S.W.2d at 597–98; *accord Winstead v. First Tenn. Bank N.A., Memphis,* 709 S.W.2d at 632. For example, in *Wilkins*, 995 S.W.2d at 583, the Court of Appeals determined that the statute of limitations for the malpractice claim commenced when the defendant attorney received the answer raising statute of limitations as an affirmative defense in the underlying action. Likewise, the statute of limitations in the instant matter was triggered when Lewis King received the appellee brief arguing waiver. At that point, the knowledge of the Lewis King Defendants regarding waiver was imputed to Allied, and Allied had constructive knowledge of this damage.

22

For these reasons, prior to March 20, 2012, Allied had knowledge that it had been damaged by Lewis King's conduct, and the statute of limitations expired prior to Allied commencing this lawsuit.

## II. Weinberg Wheeler did not commit malpractice as a matter of law.

Allied cannot articulate any argument sufficient to defeat this Motion for Summary Judgment. Allied's avenue of recovery against Weinberg, Wheeler arises from its claim that Weinberg Wheeler should have raised in the Motion for New Trial the issue of whether the trial court's decision to exclude certain testimony of Jonathan Held was proper (the "Held Issue"). Allied's position, which it *must* prove to prevail in this matter, relies on multiple false premises. First, that Weinberg Wheeler breached the standard of care when it made the reasoned legal judgment not to raise the Held Issue. Stated differently, that similarly situated attorneys under like circumstances maintained an *absolute duty* to insert an argument regarding the Held Issue in the Motion for New Trial, as opposed to an attorney simply making a decision different from the one by Weinberg Wheeler.

This first false premise relates to Weinberg Wheeler's liability and, while it will be addressed later in this Motion, the Court must first understand the circumstances giving rise to Weinberg Wheeler's alleged liability. As noted, Weinberg Wheeler maintained no duties during trial of the underlying matter, and, in fact, was completely unaware that a trial even occurred prior to being contacted several days after the trial. For purposes of this lawsuit, Weinberg Wheeler's duty to Allied centers on its role in drafting not the Motion for New Trial, but the Memorandum of Law in Support of the Motion for New Trial. As it relates to this duty, the following constitute the undisputed facts:

23

(1)   Allied asserts no allegations that the facts, law, or legal arguments included in the Memorandum in Support of the Motion for New Trial constitute a breach of the standard of care, or even that Weinberg Wheeler inartfully drafted the Memorandum in Support of the Motion for New Trial;

(2)   Allied asserts that Weinberg Wheeler omitted an alleged important argument on the Held Issue in the Memorandum in Support of the Motion for New Trial, i.e. this is a case of alleged omission;

(3)  As it relates to the Held Issue, Weinberg Wheeler considered it and decided that the multiple other arguments and issues actually included in the Memorandum in Support of the Motion for New Trial offered a better foundation for the trial court to grant a new trial.

As will be detailed below, Allied's liability against Weinberg Wheeler relies on the argument that Weinberg Wheeler's exercise of legal judgment somehow violates the standard of care, despite the fact that the legal authority dictates that Weinberg Wheeler is afforded immunity from malpractice claims in the exercise of its legal judgment and notwithstanding the fact that Weinberg Wheeler's legal judgment not only fell within the standard of care, but constituted the only sound legal judgment.  However, assuming arguendo that Allied may avoid summary judgment on its false liability premise, Allied can *never* prove as a matter of law that Weinberg Wheeler's alleged negligent failure to include the Held Issue in the Memorandum in Support of the Motion for New Trial actually *caused* any harm to Allied.  In an effort to show causation, Allied necessarily relies on various other false premises.

Allied's requirement to prove causation begins with a misconception, more so than a false premise:  that the trial court precluded Jonathan Held from testifying at all.  As even Allied

24

will likely be forced to acknowledge, the trial court only precluded a *portion* of Jonathan Held's testimony, namely his opinion that the facility was of "negligible value" at the time of the fire, and not his other opinions regarding the proper repair cost of the facility, the value of Allied's business loss, and the value of the cranes destroyed in the fire. With respect to these last three opinions, a decision was made by trial counsel *before* Weinberg Wheeler became involved to stipulate to the value of Allied's business loss and the value of the cranes, and trial counsel decided not to call Held to testify regarding his repair value opinions. Accordingly, Weinberg Wheeler could not, as a matter of law, raise any of these issues in the Motion for New Trial.

As a result, Allied must show that Weinberg Wheeler's decision not to argue that Held should have been allowed to testify regarding his "negligible value" opinion in the Motion for New Trial caused it harm, which gives rise to Allied's first false premise on the causation side: that the trial court's decision to preclude this opinion arose from the trial court's interpretation of T.C.A. § 62-39-103, a statute entitled Tennessee's "State Licensing and Certified Real Estate Appraisers Law." This premise is false as a matter of law because the trial court *never even cited this statute* in its September 9 Order. The trial court never cited this statute because it clearly did not apply to Held *and* because the trial court found several other valid reasons to preclude Held's "negligible value" opinion. *Held actually testified during his deposition that he is not a licensed appraiser and was not qualified to perform an appraisal.* Stating the obvious, the trial court could not apply Tennessee's Real Estate Appraisers law to an admitted non-appraiser who admittedly did not conduct an appraisal. Rather, the trial court ruled that Held could not provide his "negligible value" opinion because he did not perform, nor was he capable of performing by his own admission a before and after market valuation, which under Tennessee law constitutes

the only viable alternative to a repair cost valuation in cases involving property damage; the trial court found Held's negligible value opinion not relevant and prejudicial as well, all of which constitute the trial court's exercise of its discretion with respect to evidentiary matters. Accordingly, Allied cannot prove causation as a matter of law because its case against Weinberg Wheeler relies on the argument that the Memorandum in Support of the Motion for New Trial should have included an argument that the trial court erred in interpreting T.C.A. § 62-39-103, when the trial court never even applied this statute, could not have applied this statute and relied instead on several other viable reasons to preclude Held's "negligible value" opinion. Moreover, these undisputed facts beg the question: why would a similarly situated attorney operating under these circumstances even present such an issue in a Motion for New Trial, i.e. why would Weinberg Wheeler argue that the trial court misinterpreted T.C.A. § 62-39-103 when the trial court never interpreted it all? This alone qualifies as sufficient to grant summary judgment. Allied's remaining necessary causation argument truly requires the Court to suspend disbelief in order for Allied to continue with this case.

Allied's theory of this case, distilled down to its simplest form, revolves around what Allied believes Weinberg Wheeler actually did wrong in the Memorandum in Support of the Motion for New Trial: that Weinberg Wheeler failed to locate the *City of Pulaski v. Morris*, 2010 WL 3732161 (Tenn. Ct. App. Sept. 23, 2010)[8] case and use this case to convince the trial court it erred in interpreting T.C.A. § 62-39-103. Obviously, this argument relies on the false premise above that the trial court even relied on T.C.A. § 62-39-103 and for this reason must be rejected.

---

[8] It should be noted that Allied cannot establish this decision was available to Weinberg Wheeler at the time of the filing of the Memorandum in Support of Motion for New trial, i.e. that it was physically published in sufficient time to locate it, not just decided.

26

Assuming arguendo, however, that the trial court actually relied on T.C.A. § 62-39-103, the *City of Pulaski* decision cannot, as a matter of law, prove that the trial court would have exercised its discretion and allowed Held to provide his negligible value opinion. First, and perhaps related more to liability than causation, Allied must prove that it was negligent for Weinberg Wheeler to fail to search for this case in the first instance. In other words, Allied must prove that Weinberg Wheeler should have searched for cases that interpret a code section that the trial court never relied on in reaching its decision on Held. The absurdity of the allegation should be sufficient to deem it meritless as a matter of law. Clearing this monumental hurdle, Allied must prove that the trial court not merely *could have* applied *City of Pulaski* to overturn the Held decision, but that the trial court *would have* abused its discretion in failing to apply *City of Pulaski* to overturn the Held decision, which qualifies as impossible. *City of Pulaski* involves an affiliated broker that provided an appraisal opinion, which Tennessee's intermediate court of appeals decided was sufficient to constitute a valid appraisal under T.C.A. § 62-39-103. Quite to the contrary, Held was not an affiliated broker, nor did he perform an appraisal by his own admission. As a result, *City of Pulaski* is factually distinguishable, or at the least sufficient factual distinctions exist so as to afford the trial court valid justification in exercising its discretion *not* to apply *City of Pulaski*. Moreover, *City of Pulaski* is an unpublished opinion that offers no stare decisis value. Accordingly, the trial court could have properly exercised its discretion in simply ignoring *City of Pulaski*.

These last two arguments not only support summary judgment in favor of Weinberg Wheeler, but illustrate the ultimate causation conundrum that precludes Allied from asserting any claim against Weinberg Wheeler. No matter the argument propounded by Allied in support

27

of what *could have* happened if Weinberg Wheeler found *City of Pulaski* and included it in the Memorandum in Support of Motion for New Trial, Allied can never prove that the trial court maintained a legal obligation to apply *City of Pulaski* in the manner argued by Allied. So long as any argument exists that *City of Pulaski* does not apply to these facts, or it can be ignored because it is unpublished or, in a broader context, that the trial court excluded Held's valuation opinion on the basis that he did not or could not perform the necessary market valuation to justify his opinion, Allied cannot as a matter of law prove that the trial court abused its discretion. Stated differently, the law imposes on Allied a duty to not simply prove that the trial court could have done something different with respect to Held, but that the trial court absolutely would have done something different with respect to Held. Even if Weinberg Wheeler argued the Held Issue, even if Weinberg Wheeler argued that T.C.A. § 62-39-103 did not preclude Held's testimony, even if Weinberg Wheeler found *City of Pulaski* (all highly dubious obligations to begin with), for the various reasons provided herein the trial court could have reasonably exercised its discretion and not allowed Held to testify about his negligible value opinion anyway, which means that Allied's argument that Weinberg Wheeler's failure to perform these alleged obligations did not cause harm to Allied as a matter of law. Stated simply, not only was Weinberg Wheeler justified in not raising these arguments, it is speculative at best to conclude that these arguments would have resulted in a new trial.

Allied's assumption that a new trial that included Held's valuation opinion would have resulted in Allied incurring damages less than those it incurred without Held's valuation opinion constitutes its final false premise. Prior to Weinberg Wheeler's involvement, trial counsel stipulated to damages in excess of $3.9 million arising from losses wholly unrelated related to

28

Held's valuation opinion. Stated differently, Allied would have incurred at least $3.9 million in damages even if the jury agreed with Held that the facility had "negligible value" at the time of the fire. Allied was required under its insurance policy to pay the first $2.5 million of any award. Accordingly, if the jury returned a verdict anywhere between the range of the stipulated minimum of $3.9 million and the actual $7.2 million, Allied would still have incurred $2.5 million in damages, thereby rendering Held's opinion as to valuation moot.

Weinberg Wheeler appreciates that the foregoing arguments as detailed below present a complex scenario upon which to base summary judgment. Provided further, however, an understanding of each of these arguments leads to the inexorable conclusion that Allied's claims against Weinberg Wheeler cannot be maintained as a matter of law. As this Court considers these arguments, the fundamental flaw in Allied's case against Weinberg Wheeler can serve as the lodestar: in order for Allied to prevail in this lawsuit, it must convince the Court that Weinberg Wheeler erred in failing to argue that Held should have been able to provide an opinion that he admittedly was not qualified to provide nor did he even undertake to provide.

### A. Allied cannot prove causation as a matter of law.

The undisputed facts show that Allied cannot prove the element of causation, because Allied cannot prove that Weinberg Wheeler caused a result that would not have otherwise occurred. Allied's First Amended Complaint alleges that Weinberg Wheeler failed to preserve the Held Issue for appeal[9] and failed to preserve properly the "exclusion of the testimony from a

---

[9] Allied's allegation regarding this claim is actually an alternative claim: "If the trial court's exclusion of Held's expert testimony was based on an erroneous interpretation of T.C.A. § 62-39-103, the trial court committed plain error in granting the motion *in limine* and the Levine Orr Defendants, Lewis King Defendants, and Weinberg Wheeler Defendants negligently caused

29

Metro Nashville employee as to intended demolition costs and evidence of the facility's pre-fire condition." (First Amended Complaint, Doc. 12, ¶¶ 42, 43, pp. 49-50). In response to this summary judgment, Allied will argue that the trial court would have granted a new trial on the Held issue because of the opinion, *City of Pulaski v. Morris*, 2010 WL 3732161 (Tenn. Ct. App. Sept. 23, 2010), that was entered weeks after the trial court excluded Held. However, pursuant to the undisputed facts and law, Allied cannot establish that this alleged conduct, even if proven to be true, caused damage that would not have otherwise occurred.[10]

### 1. The trial court excluded Held's valuation opinion for several valid reasons other than the application of T.C.A. § 62-39-103

Allied cannot prove that the trial court would have granted a new trial on the Held issue irrespective of any consideration of T.C.A. § 62-39-103. First, the trial court never even relied on T.C.A. § 62-39-103 because the statute fails to apply to the exclusion of Held's market value opinion. Held admitted he was not an appraiser, and was not qualified to render a market value opinion. Further, Held admitted he did not perform the required analysis to support such an opinion. The issue of Held's lack of an appraiser's license was not relevant to the admissibility of his opinion at trial. The admissibility of expert opinion in Tennessee is governed by Rules 702 and 703 of the Tennessee Rules of Evidence.[11] The trial court, therefore, must determine that the

---

Allied/BFI's harm in failing to properly preserve the issue on appeal." (First Amended Complaint, Doc. 12, ¶ 42, p. 49).

[10] As will be explained below, Weinberg Wheeler denies waiving any issues. Weinberg Wheeler based its decision to include or exclude certain issues in the Motion for New Trial on reasoned legal judgments.

[11] Tenn. R. Evid. 702 provides: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify in the form of an opinion or otherwise." Tenn. R. Evid. 703 provides,

expert testimony is reliable in that the evidence will substantially assist the trier of fact to determine a fact in issue and that the underlying facts and data appear to be trustworthy. In addition to these specific rules, evidence generally must be relevant to be admissible. *Brown v. Crown Equipment Corp.,* 181 S.W.2d 268, 274 (Tenn. 2005). The objective of the trial court's gatekeeping function is to ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (citing *Kumho Tire Co.,Ltd. v. Carmichael ,* 526 U.S. at 152, 119 S.Ct 1167). Clearly, Held's own testimony undercuts any argument in favor of his testimony being reliable or substantially assisting the trier of fact to determine an issue as to damages in the underlying case.

Independent of T.C.A. § 62-39-103, Held was unqualified to testify about any measure of damages other than repair cost. Prior to the underlying trial, Metro Nashville raised three reasons for why Held's opinion regarding the value of the facility should be stricken: (1) he is not a licensed real estate appraiser, broker or salesperson; (2) he is not qualified; and (3) his methodology is unreliable. Allied will undoubtedly focus on the first reason, because it contends that Weinberg Wheeler failed to refer to a statute and case that makes the first issue moot. However, neither the statute nor the case applied to the facts, and did not change Mr. Held's qualifications or his methodology. In other words, regardless of Mr. Held's licensure, his

---

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

31

deposition testimony precluded his opinion at trial, and the trial court would never have reversed itself if given the opportunity to review the Held issue.

The Held Issue pertains to the property damage to the facility. Tennessee law regarding property damage placed the burden on Allied to offer proof of an alternative measure of damages to Metro's proof of cost of repair. *Oakwood Furniture Mfg., Inc. v. Ruh & Pressley Const. Co.*, 1993 WL 477020, at *4 (Tenn. Ct. App. Nov. 15, 1993). "The burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omissions." *Id*. With respect to determining value of a given parcel of real estate, the Sixth Circuit has recognized that there are "universally accepted" methods. In *United States v. 0.376 Acres of Land*, 838 F.2d 819, 827 (6th Cir. 1988) (Krupansky, concurring), the concurring opinion stated as follows:

> Fair market value of any given parcel of property is proved by testimony of experts in the person of appraisers who, by the application of universally accepted and applied appraisal theories and practices, arrive at the relative value of that parcel of realty. The American Institute of Real Estate Appraisers (Institute), the Society of Real Estate Appraisers (SREA), as well as other nationally recognized professional real estate appraising societies, have accepted basically three uniform approaches to the appraisal of real estate that have been utilized by qualified practicing appraisers though the nation. The three recognized theories or approaches as they are characterized are as follows. First, the market data approach, which is a basic rather simplistic method employed to appraise buildings and land. This approach estimates the fair market value of the property in controversy by juxtaposing it with recent, comparable property sales in the geographic area. Second, the income approach, which is generally utilized for appraising commercial property. Under this approach fair market value is estimated by capitalizing the net income attributable to real estate. Third, the cost approach, pursuant to which theory the fair market value of the property is determined by appropriately depreciating the replacement cost of the structures when new to arrive at their present value and adding thereto the value of the land calculated in accordance with the comparable sales approach.

The trial court found that Held was not qualified to give an opinion regarding value. As the gatekeeper of evidence, the trial court was responsible to "ensure that 'an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Brown v. Crown Equip. Co.*, 181 S.W.3d 268, 273 (Tenn. 2005) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, (1999)). The trial court assesses the admissibility of proposed expert testimony by determining whether the witness is qualified by knowledge, skill, experience, training or education to offer an opinion. *See State v. Scott*, 275 S.W.3d 395, 402 (Tenn. 2009). "This determination hinges upon whether the proposed expert's qualifications authorize him or her to give an informed opinion upon the fact or issue for which his or her testimony is being proffered." *Scott*, 275 S.W.3d at 402.

In this case, the trial court's job was *not* difficult. The trial court found that Held's opinion regarding the value of the facility "constitutes an appraisal opinion, which he is not qualified to give." (Ex. D, 0000002536). To determine his qualifications, the trial had to look no further than Held's deposition admission that he was not qualified:

> Q.   Well, so now that we've established your kind of academic approach to this or your general approach, what we know is that you did not undertake, nor were you qualified to undertake, an actual real estate appraisal to apply these principles we've been discussing to an actual before and after evaluation of this property; is that correct?
> A.   That is correct, yes.
> Q.   So you cannot give an opinion from a real estate appraisal standpoint as to the before and after value of this particular property? "Before and after" meaning before and after the fire.
> A.   I understand that. I understand the question and the answer is no, I cannot give that opinion.

33

(Depo of Held at p. 39). As a result of admitting that he is not qualified to offer the opinion, Held's opinion testimony concerning the value of the waste facility was properly excluded. *See Smith County v. Eatherly*, 820 S.W.2d 366, 368 (Tenn. Ct. App. 1991) ("A trial court may properly decline to qualify a witness as a valuation expert when the witness concedes a lack of expertise in the field of real estate values"); *Brookside Mills, Inc. v. Moulton*, 404 S.W.2d 258, 264 (Tenn. Ct. App. 1965) ("In view of the witnesses admitted lack of qualification to testify on real estate values, we see no error in the exclusion of their testimony").

Further, the trial court excluded Held's testimony due to the lack of reliability of his methodology. Under Rule 703 of the Tennessee Rules of Evidence, a trial court must determine "whether the reasoning or methodology underlying the scientific evidence is sufficiently valid and reliable…." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 258 (Tenn. 1997). The methodology for Held's opinion was not reliable or valid based on his admission that he did not undertake to complete any independent analysis of the market value of the waste facility before the fire, much less employ any of the three "universally accepted and applied" methodologies referenced by the Sixth Circuit. (Ex. B, 0000002711). Held reached the conclusion that the waste facility is of negligible value despite the fact that he never once examined the waste facility in question. (Ex. B, 0000002711). In addition, there was no evidence that Held conducted any analysis of comparable sales or made any attempt to capitalize the net income attributable to the waste facility. Under such circumstances, it cannot be said that the methodologies he employed were reliable. As such, his opinion was properly excluded. *See Jackson v. Joyner*, 309 S.W.3d 910, 916 (Tenn. Ct. App. 2009) ("expert testimony cannot be based on mere speculation or connection to data only through the 'ipse dixit' of the expert").

34

Finally, the trial court's exclusion of Held's valuation testimony was appropriate because Held had no opinion on the appropriate measure of damages other than repair cost. He was admittedly unqualified to formulate such opinion prior to trial. It was only logical, and in fact *necessary*, to exclude his testimony on this subject.

For these reasons, the trial court's September 9 Order never even cited T.C.A. § 62-39-103 because the trial court did not need to in order to justify excluding an opinion from a person that never had that opinion, that never attempted to perform the necessary anlaysis to provide such an opinion and who was not qualified by education or experience to provide such an opinion in the first instance. Accordingly, Allied cannot prove that the trial court would have reached a conclusion on the Held Issue different than the one included in the September 9 Order, which in turn means that Weinberg Wheeler's alleged failure to raise the Held Issue failed to cause any harm as a matter of law

### 2. *City of Pulaski v. Morris*, 2010 WL 3732161 (Tenn. Ct. App. Sept. 23, 2010) is a red herring.

The trial court would never have granted a new trial had it considered the Held Issue in light of *City of Pulaski v. Morris*. The opinion in *City of Pulaski v. Morris*, 2010 WL 3732161 (Tenn. Ct. App. Sept. 23, 2010) fails to change the outcome on the Held Issue because: (1) the trial court did not exclude Held based on the statute discussed in *City of Pulaski* (2) the expert in *City of Pulaski* had an appraisal opinion; (3) the expert in *City of Pulaski* was qualified to give an appraisal opinion under Tenn. R. Evid. 702; and (4) City of Pulaski is an unpublished decision with no stare decisis value.

*City of Pulaski v. Morris* is an unreported and non-binding opinion from the Tennessee Court of Appeals that addresses, as it relates to this case, whether T.C.A. § 62-39-103(a)

prohibits affiliate brokers from providing an opinion as to the value of land. *Id*. at * 3 ("our discussion is limited to whether Tenn. Code Ann. § 62-39-103(a) prohibits affiliate brokers from providing an opinion of value").[12] *City of Pulaski* was a condemnation case tried solely on the issue of the value of the defendant's property. *Id*. at * 1. On appeal, the defendants challenged the admissibility of the plaintiff's experts' opinions on value of defendant's real property. One of the experts was an affiliate broker of real estate (real estate agent) with ten years of experience assisting sellers and buyers in the community with transactions for commercial, agricultural, and residential property. *Id*. at * 4. This expert provided testimony on the appreciation in value of the property given general market conditions. *Id*. at * 1. However, due to his lack of licensure, the defendant's challenged the admissibility of his opinion under Tenn. Code Ann. § 62-39-103(a). The Court of Appeals affirmed the trial court's denial of defendant's challenge because,

> While the [defendants] are correct that licensed appraisers can testify as to value, they are not the only persons properly admitted as experts, and [Tenn. Code Ann. § 62-39-103(a)] does not limit the trial court's discretion in admitting or excluding the testimony of affiliate brokers, to the extent the testimony otherwise complies with the Tennessee Rules of Evidence.

*Id*.

In the instant matter, the trial court did not exclude any testimony due to the language in T.C.A. § 62-39-103(a). The trial court's order does not mention this statute. The trial court's order does not track the language of the statute by referring to Held's opinion being "unlawful" or by referring to his lack of "a real estate appraiser's license or certificate." The trial court speaks through its orders, and the trial court's order very clearly indicates that Held was not

---

[12] "Except as provided in § 62-39-104, it is unlawful for anyone to solicit an appraisal assignment or to prepare an appraisal or an appraisal report relating to real estate or real property in this state without first obtaining a real estate appraiser's license or certificate."

qualified to give an appraisal opinion. (Ex. D, 0000002536); *Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013) ("Trial courts, as a general matter, speak through their orders and judgments").

As a result, the statute regarding real estate appraisers, as well as the *City of Pulaski v. Morris* opinion, was and is irrelevant to the exclusion of Held's valuation opinion. Held's testimony is the reason Allied could not establish before and after value of the waste facility. Unlike the expert in *City of Pulaski*, Held had no opinion regarding value and he admitted he was unqualified to provide such an opinion. The *City of Pulaski* opinion does not change his testimony. As a result, had the trial court considered Held's opinion in the Motion for New Trial, it would not have had sufficient facts to apply the law in the *City of Pulaski* opinion.

Moreover, the fact that *City of Pulaski* is not a published opinion renders it incapable of stare decisis effect. As a result, the trial court need not even have considered *City of Pulaski* and it would be impossible for Allied to argue that failing to consider *City of Pulaski* would have resulted in reversible error. The reality of this issue is readily apparent: the trial court need not have considered *City of Pulaski* to affirm its decision to exclude Held's valuation opinion because it interprets a statute the trial court never relied on in the first instance, it is factually distinguishable on this and other grounds, and it is legally non binding. To win this case, Allied must show not simply that the trial court would have considered City of Pulaski and reversed its decision, for this would be speculative, but that the trial court would have had no choice but to reverse based on *City of Pulaski*.

3. **Allied cannot prove causation because the trial court did not abuse its discretion by excluding Held's testimony on valuation.**

37

Had the Court of Appeals considered the Held Issue it would have been bound by the abuse of discretion standard; whether the trial court abused its discretion is an issue of law. The trial court excluded Held's valuation testimony in response to Metro's Motion *in Limine*. As an evidentiary ruling, this decision is reviewed under an abuse of discretion standard. The Tennessee Supreme Court recognizes this as a high standard of review:

> In Tennessee admissibility of evidence is within the sound discretion of the trial judge. When arriving at a determination to admit or exclude that evidence which is considered relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion.

*Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). Under the abuse of discretion standard, a trial court's ruling as to the admission or exclusion of evidence will be upheld "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill,* 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). An appellate court is "not permitted to substitute [its] judgment for that of the trial court" *Id.* An appellate court can only find that the trial court abused its discretion when it is clear that the trial court applied an incorrect legal standard or reached a decision that was against logic or reasoning that also caused an injustice to the complaining party. *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

The Court of Appeals would not have found that the trial court abused its discretion because the trial court's exclusion of Held's valuation opinion was logical, was based on the correct legal standard, and did not cause an injustice. The logic and legal standard for the trial court's decision have been previously discussed. Tennessee accepts only two methods for determining property damage: (1) before and after valuation; or (2) cost of repair. *Oakwood*

38

*Furniture Mfg., Inc. v. Ruh & Pressley Const. Co., Inc.*, 1993 WL 477020, * 4 (Tenn. Ct. App. Nov. 15, 1993). As previously shown, Mr. Held testified he could not give a before and after valuation, he was not qualified to give a before and after valuation, and he had not prepared an opinion on a before and after valuation.

Because he did not have a before and after opinion as to value, Mr. Held's opinion that the facility had a negligible value prior to the fire based on pre-fire plans was irrelevant, and it was properly excluded at trial. Moreover, the *City of Pulaski v. Morris* case would not have changed Mr. Held's admissions. Had the Court of Appeals considered the arguments instead of finding waiver, it would have affirmed. As a result, regardless of the alleged waiver, Weinberg Wheeler did not cause a result to Allied that would not have otherwise occurred.

Notwithstanding these arguments, Allied can only speculate that the Held issue and the *City of Pulaski v. Morris* opinion would have changed the outcome. As a result, Allied cannot prove causation. The speculative nature of causation is evident from Allied's burden of proof and the abuse of discretion standard. The difficulty of showing an abuse of discretion has already been discussed. It has also been shown that trial court findings were logical and based on the correct legal standard independent from Tenn. Code Ann. § 62-39-103. Allied cannot prove otherwise.

However, as an additional level of speculation, to prove the alleged waiver caused it damages, Allied must prove by a preponderance of the evidence that the trial court abused its discretion. *See e.g. Zonge v. Woodall*, 2000 WL 1473861, * 7 (Tenn. Ct. App. Oct. 5, 2000) (appeal denied April 9, 2001) ("[plaintiff] must demonstrate that [his attorney's] decision not to raise that defense resulted in the appellate court's affirmance of his conviction"). In other words,

39

Allied must prove that it is more likely than not that the Court of Appeals would have found that the trial court abused its discretion.

Despite the staggering difficulty of this burden, Allied will offer an expert opinion by a lawyer regarding causation. The opinion will state within a reasonable degree of legal certainty that the inclusion of the Held issue in the Motion for New Trial would have caused the Court of Appeals to grant a new trial. The opinion will be based on the expert's experience, education, and training. However, the practice of law is not a science that can be testified, quantified, or predicted with the probability the one expects from a scientific method. *Hill v. Mynatt*, 59 S.W. 163, 167 (Ct. Chanc. App. 1900) ("As a matter of fact, law is not an exact science…."). As a result, it should be evident to this Court that it is impossible to determine with any certainty whether the trial court or court of appeals would have reached a different conclusion as a result of the Held issue. One can only speculate what influences a trial court's decision or a court of appeals' opinion, and Allied cannot present any evidence that more likely than not the Court of Appeals, or the trial court for that matter, would have reached a different outcome. Reasonable minds would not disagree.

### 4. Allied cannot prove as a matter of law that a new trial would result in payment of damages less than it paid absent the new trial.

Allied maintained a policy of insurance through AIG that provided coverage for the 7.2 million verdict in the underlying case. Under the terms and conditions of the policy, Allied was responsible for paying a self-insured retention (SIR) or deductible of $2.5 million dollars plus a pro-rate share of any litigation costs incurred in the underlying case based on the percentage of Allied's payment to the total verdict. The balance of the verdict and costs would be paid by Allied's insurer. Therefore, the actual payment by Allied towards satisfaction of any judgment or

40

settlement in the underlying case is limited to the $2.5 million dollar SIR and its pro-rata share of the litigation costs.

Had the court of appeals granted a new trial, the case would have been remanded with stipulated damages in an amount that exceeded Allied's SIR under its insurance policy. It cannot be disputed that prior to the underlying trial Allied's counsel stipulated to damages in the total amount of $3,927,057. (Ex. J, 0000002459) ($2,399,057 for business interruption loss, and $1,528,000 for replacement cost of destroyed cranes). Allied's deductible on its insurance policy was $2,500,000. (Ex. F, p. 127). Further, the insurance policy required Allied to reimburse its insurer for litigation expenses, including attorney fees, at a percentage that equaled the deductible's percentage of the total amount paid by the insurer. (Ex. F, p. 132). The example used in Mr. Spruance's deposition went accordingly:

> Q.    So, if I understand correctly, then, in the Metro case, because the settlement was $8 million, pursuant to this endorsement, Allied would only be responsible for the pro rata share that it contributed towards the settlement of $2 and half million?
> A.    About 25 percent, for example, or 20 percent, right.
> Q.    And AIG would be responsible for the rest?
> A.    That is the way it should be, yes.

(Ex. F, p. 133).

If the court of appeals determined that the trial court abused its discretion by excluding Mr. Held's valuation opinion, the court of appeals would remand the case for a trial on damages. The exclusion of Held's valuation opinion only related to the amount of damages recoverable by Metro; it did not bear any relation to Allied's liability. Similarly, the demolition costs and pre-fire condition had no bearing on liability, and as a result the court of appeals would not have ordered a new trial as to liability.

41

A new trial on the issue of damages would have been subject to the stipulated damages in the amount of $3,927,057. Allied would still have been responsible for its $2,500,000 deductible. In addition, assuming Allied's damages were reduced to $3,927,057, Allied would be responsible for a greater percentage of litigation costs as well as the additional litigation costs incurred due to a second trial.

Had the court of appeals considered the Held issue, or any other allegedly waived issues, Allied would *still* be responsible for its $2,500,000 deductible, and it potentially would be responsible for an increased amount of litigation costs. As a result, Allied cannot prove that Weinberg Wheeler caused any damages.

**B.    Allied cannot prove that Weinberg Wheeler's conduct fell below the standard of care.**

For Allied to prevail in this case, it must demonstrate that: (1) the trial court excluded Held on the basis of Tenn. Code Ann. § 62-39-103(a); (2) the *City of Pulaski v. Morris* opinion, entered days before the underlying trial began, required a reversal of the trial court's exclusion of Held; and (3) Weinberg Wheeler breached the standard of care by not including the Held issue in the Motion for New Trial. In other words, without the *City of Pulaski* opinion, the trial court had a basis, though not exercised, to exclude Held under Tenn. Code Ann. § 62-39-103(a), because he was not licensed. However, the *City of Pulaski* opinion was not a settled point of law by the Tennessee Supreme Court. Therefore, it cannot form the basis of liability against Weinberg Wheeler.

"It is widely held that there is no liability for an attorney's error of judgment as to rules of law which have not been settled by the highest court in the state, and on which there is reasonable doubt." *Gregory v. Ward*, 1992 WL 184692, * 2 (Tenn. Ct. App. Aug. 5, 1992)

42

(citations omitted). "[T]he issue of whether an attorney is liable for an error of judgment on unsettled rules is an issue of law to be determined by the Court." *Id.*

It is undisputed that Weinberg Wheeler's decision not to include the Held issue was based on reasoned legal judgment. (Depo. of Witzigreuter, pp. 11-12).[13] The decision turned not on the statute cited in the *City of Pulaski* case but on Held's admission that he was neither qualified nor prepared to offer an opinion on the facility's market value before the fire. (Depo. of Witzigreuter, p. 17). Nevertheless, and notwithstanding Held's admissions, Weinberg Wheeler cannot be liable for the effect *City of Pulaski* may have had on the court of appeals interpretation of Tenn. Code Ann. § 62-39-103(a). The opinion was entered days before the underlying trial. It was completely irrelevant given Held's testimony; in fact, it would be unreasonable to bill for researching the effect of Tenn. Code Ann. § 62-39-103(a). Finally, "the law does not require and never has required of a member of the profession that he should be a true Sir Oracle of what the courts have decided or will decide as the law applicable to every given state of facts." *Hill v. Mynatt*, 59 S.W. 163, 167 (Ct. Chanc. App. 1900).

For these reasons, Allied cannot prove that Weinberg Wheeler breached the standard of care, and this Court should enter judgment in Weinberg Wheeler's favor as a matter of law.

### III. Weinberg Wheeler did not cause the exclusion of evidence regarding demolition costs or the pre-fire condition of the facility.

At trial, Allied failed to introduce any evidence regarding demolition costs or the pre-fire condition of the facility. Allied attempted to offer the testimony of Held for the pre-fire condition

---

[13] Although Lewis King may dispute that it participated in the decision, this dispute would not be material to this argument. It would, however, be suspect in light of the undisputed facts that Lewis King prepared the Motion for New Trial and provided analysis on the Memorandum of Law.

43

of the facility, but the trial court excluded it for reasons mentioned above. Allied attempted to offer evidence of demolition costs through the testimony of Harvey Gershman. However, the trial court excluded this evidence on the basis that demolition costs were irrelevant. (Ex. D, 0000002537). Following trial, Allied requested an opportunity to make post-trial offers of proof with respect to eight issues, including the testimony of Harvey Gershman. The trial court denied this request except as to the excluded opinions of Held regarding the value of the Nashville Thermal property. (Order, 0000002498).

Simply put, Weinberg Wheeler could not raise the demolition cost testimony of Harvey Gershman for appeal, because there was no evidence introduced at trial to preserve. Error may not be predicated on a ruling that excludes evidence unless "the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103(a)(2). Weinberg Wheeler inherited a situation where no offer of proof was made for the proposed testimony of Harvey Gershman. As a result, his testimony regarding demolition cost could not be preserved as error. Although, Weinberg Wheeler attempted to make a post-trial offer of proof, this was denied by the trial court. Consequently, the only error regarding Harvey Gershman available for appellate review was the trial court's decision to deny the post-trial offer of proof. It was only by raising this error that Weinberg Wheeler could even discuss his proposed testimony regarding demolition costs.

For these reasons, Allied cannot establish that Weinberg Wheeler caused any damage resulting from evidence regarding demolition costs or pre-fire condition of the facility.

**CONCLUSION**

44

Allied failed to commence its claim within the applicable statute of limitations. Allied cannot prove causation. Allied cannot establish that Weinberg Wheeler breached the standard of care. Each of these issues should be decided by this Court, and Weinberg Wheeler has properly supported each argument with undisputed facts that unequivocally establish the anticipated legal conclusions. As a result, Weinberg Wheeler is entitled to judgment as a matter of law, and this Court should grant Weinberg Wheeler's Motion for Summary Judgment.

Respectfully submitted,

ORTALE, KELLEY, HERBERT & CRAWFORD

/s/David B. Scott
David B. Scott, BPR# 12240
T. William A. Caldwell, BPR # 027130
330 Commerce Street, Suite 110
Nashville, TN 37201
(615) 256-9999
Email *dscott@ortalekelley.com*
Email *wcaldwell@ortalekelley.com*
*Counsel for Weinberg, Wheeler, Hudgins, Gunn & Dial,
    and Terrance Sullivan*

## Certificate of Service

I hereby certify that I electronically filed the foregoing with the Clerk of the Court on the **27th** day of **October, 2014**, using the CM/ECF system, which will send notification of such filing to the following:

Douglas C. Northup
Carrie Pixler Ryerson
FENNEMORE CRAIG, P.C.
2394 East Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Email dnorthup@fclaw.com
Email cryerson@fclaw.com
*Counsel for Plaintiffs*

Kenneth Ray Jones, Jr.
James W. White
JONES HAWKINS & FARMER, PLC
One Nashville Place, Suite 1820
150 Fourth Avenue North
Nashville, TN 37219
Email kjones@joneshawkinsfarmer.com
Email jwhite@joneshawkinsfarmer.com
*Counsel for Plaintiffs*

Darrell G. Townsend
HOWELL & FISHER
300 James Robertson Parkway
Court Square Building
Nashville, TN 37201-1107
Email dtownsend@howell-fisher.com
*Counsel for Lewis, King, Krieg & Waldrop and*
    *Linda Hamilton Mowles and Deborah Stevens*

Darryl G. Lowe
Gregory Brown
LOWE YEAGER & BROWN
900 South Gay Street, Suite 2102
Knoxville, TN 37902
Email dgl@lyblaw.net
Email gb@lyblaw.net
*Counsel for Levine, Orr & Geracioti, PLC, and*
    *Robert Orr, Jr.*

                                    /s/ David B. Scott
                                    David B. Scott