IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALLIED WASTE NORTH AMERICA, INC., a Delaware corporation; and BFI WASTE SERVICES, LLC, a Delaware limited liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>LEWIS, KING, KRIEG & WALDROP, P.C., a Tennessee professional corporation; LINDA HAMILTON MOWLES, an individual; DEBORAH STEVENS, an individual; LEVINE, ORR & GERACIOTI, PLLC, a Tennessee limited liability company; ROBERT ORR, JR., an individual; WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC, a Georgia limited liability company; and TERRANCE SULLIVAN, an individual,<br><br>Defendants. | JURY DEMAND<br><br>No. 3:13-cv-00254<br><br>Judge Sharp<br>Magistrate Judge Brown |

## DECLARATION CONCERNING RULE 26 REPORT

I, William S. Walton, state that I am over the age of 18 and provide this Declaration based upon facts personally known to me. I am an attorney licensed to practice law by the State of Tennessee. I was engaged in this case by counsel for Levine, Orr & Geracioti, LLC and Robert Orr to provide my professional opinion as to whether Mr. Orr and his law firm complied with applicable professional standard of care in their representation of Allied Waste North America and BFI Waste Services LLC in the circumstances and facts of the underlying litigation leading to the present case.

In accordance with Rule 26 (a) (2) (B), Fed. R. Civ. P., I prepared a Report of my conclusions. In accordance with 28 U.S.C. § 1746, I state under penalty of perjury that a copy

EXHIBIT C

of my Rule 26 (a) (2) (B), Fed. R. Civ. P. Report is attached hereto as <u>Exhibit A</u>. The attached report, to which reference is hereby made, describes my qualifications, and includes the subject of my professional opinions, including matters involving professional judgment.

        Respectfully submitted,

        <u>/s/ William S. Walton</u>
        WILLIAM S. WALTON, #11177
        The Pinnacle at Symphony Place
        150 3rd Avenue South, Suite 1600
        Nashville, TN 37201
        Phone: (615) 651-6700

2

Case 3:13-cv-00254 Document 85-3 Filed 10/27/14 Page 2 of 15 PageID #: 1909

| | |
|---|---|
| ALLIED WASTE NORTH AMERICA, INC., a Delaware corporation; and BFI WASTE SERVICES, LLC, a Delaware limited liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> LEWIS, KING, KRIEG & WALDROP, P.C., a Tennessee professional corporation; LINDA HAMILTON MOWLES, an individual; DEBORAH STEVENS, an individual; LEVINE, ORR & GERACIOTI, PLLC, a Tennessee limited liability company; ROBERT ORR, JR., an individual; WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC, a Georgia limited liability company; and TERRANCE SULLIVAN, an individual, <br><br> Defendants. | JURY DEMAND <br><br> No. 3:13-cv-00254 <br><br> Judge Sharp <br> Magistrate Judge Brown |

## RULE 26 REPORT

The following report is provided pursuant to Rule 26 (a) (2) (B), Fed. R. Civ. P.

### EDUCATIONAL AND BACKGROUND INFORMATION

My name is William S. ("Bill") Walton. I am an attorney licensed to practice law by the State of Tennessee. I have been continuously licensed since 1984. I attended college on an Army scholarship and graduated from Vanderbilt University, *cum laude*, in 1981. Upon graduation, I was also designated as a Distinguished Military Graduate.

I subsequently attended the University of Tennessee College of Law. While at the University of Tennessee, I served as Casenotes Editor of the Tennessee Law Review and was also selected as a member of the Moot Court Board. In addition, I was elected to two academic societies, Phi Kappa Phi and the Order of the Coif while at the University of Tennessee.

document was presented to Mr. Orr in the final form for filing on the date it was due. The client, Allied, did not seek his opinion concerning the motion for a new trial or seek to confer with Mr. Orr concerning such matters.

There is no indication that Allied sought any assistance from Mr. Orr or the Levine Orr firm concerning the preparation of such motion or any supporting legal brief. Consistent with his limited role as local counsel, Mr. Orr conducted a preliminary review of the documents before signing the documents and submitting the document for filing on January 3, 2011. The motion was set for hearing on January 28, 2011. The motion was argued on January 28, 2011. Other than attendance at the January 28, 2011 hearing as local counsel, Mr. Orr and his law firm played now further role with the case. He was not involved with preparation of the appellate briefs, or argument on the appeal. Mr. Order and the law firm of Levine Orr were not asked by Allied or AIG to formulate the post-trial appellate strategy, preparation of the appellate briefs or argument on appeal.

## PROFESSIONAL OPINIONS

From these facts, I have reached the following conclusions and provide the following professional opinions:

1. <u>Overall Compliance with the Standard of Care</u>.

Robert Orr and the members of his law firm, Levine Orr complied with the standard of acceptable professional care for lawyers practicing in this community at all relevant times to their representation of Allied in this case. Levine Orr, and Mr. Orr in particular, represented Allied vigorously and zealously in accordance with the applicable standard of care. Mr. Orr and Levine Orr communicated fairly, openly and frequently with Allied and its insurer, AIG, concerning the course of the litigation.

48

The jury's conclusion that Allied was at fault for the fire[135] was a risk known to Allied in trying the case. The jurors' review of the facts presented by the witnesses concluded that Allied was at fault. The observers of the trial, as well as opposing counsel in the underlying case (Jim Warren), testified that their observation was that Mr. Orr did a good job during the trial, he was prepared, he had a command of the facts and the law, and he presented well before the jurors.

The fact that the jury ruled against Allied does not mean that Mr. Orr or his law firm did not comply with the acceptable standard of care for a lawyer under the same or similar circumstances. Similarly, the fact that the trial judge ruled adversely against Allied on several pre-trial evidentiary issues does not mean that Mr. Orr or his law firm failed to comply with the applicable standard of professional practice for a lawyer under the same or similar circumstances.

Mr. Orr was optimistic about Allied's chances at trial. At the same time, however, Mr. Orr informed Allied and AIG long before the trial began that the case was either going to be completely won or completely lost based upon whether the jury felt Allied bore fault for the fire. Based upon the experience level of Allied and AIG in dealing with litigation, as well as the fact that Allied had its own legal department, Allied knew that the outcome of the litigation was uncertain. Allied appears to have been banking on winning or otherwise expecting that a jury would discount Metro's own alleged negligence. Mr. Orr and the Levine Orr law firm worked hard on behalf of Allied for five (5) years and kept Allied and AIG fully advised of developments in the case and witness testimony during the duration of their representation of Allied. They zealously advocated Allied's position before and during the trial. Unfortunately, the jury did not agree that Allied should not bear fault for the fire.

---

[135] See Jury Verdict Form.

49

I respectfully disagree with David Randolph Smith's criticism on behalf of Allied that Levine Orr should refund any fees that the firm was paid over the course of the five (5) year engagement in representing Allied. Levine Orr and its counsel fought a hard battle in this case. No one has criticized the amount or reasonableness of the fees charged. Over the course of five (5) years, the Levine Orr firm invested more than 1,100 hours to defend Allied in the case. They communicated regularly with Allied and AIG and they were honest and forthright with those communications. They provided Allied and AIG with relevant documentation in a timely fashion.

Allied and AIG knew Mr. Orr would try the case and be trial counsel long before the trial. Indeed, the Pre-Trial report dated April 26, 2010 specifically stated, "Robert Orr will try the case."[136] Mr. Orr and the members of his law firm fulfilled their fiduciary duties to Allied and AIG and always dealt with Allied and AIG in a candid and forthright fashion. Moreover, post-trial, Mr. Orr made his entire file available to the attorneys for Weinberg Wheeler (new counsel hired by Allied) and answered any questions they (or Allied) presented and offered any assistance requested by Allied. Despite expressing his willingness to help, Allied did not want Mr. Orr or his firm involved, substantively on post-trial matters.

2. Standard of Care Concerning Retention of Mr. Held.

It is my professional opinion that Mr. Orr's selection and retention of Jonathan Held as a potential damage expert complied with the standard of acceptable professional practice for attorneys practicing this this community in 2010. Mr. Held, as described by Judge Binkley, possessed "impressive credentials." The information submitted to the trial court indicates that Mr. Held possessed the qualifications necessary for expert testimony. Judge Binkley appears to

---

[136] Doc. Republic 000106.

50

have rejected part of Mr. Held's testimony based upon the fact that Judge Binkley believed that the appraisal statute required that such testimony could only be provided by a licensed appraiser. Judge Binkley rejected Mr. Held as a witness because Mr. Held was not licensed as an appraiser.

The admission of expert testimony is never guaranteed or required by the trial court. The trial court retains discretion concerning the admission of experts. Here, the trial court excluded Mr. Held based upon an appraisal opinion which Mr. Held technically did not offer. He did not appraise the property nor did Mr. Held purport to appraise the property.

The selection of Mr. Held was made with the knowledge, recommendation and consent of Allied and AIG. The trial court's rejection of Mr. Held as a witness, and the trial court's interpretation of the appraisal statute appear to have been the primary reason that Mr. Held was excluded as a witness. Judge Binkley's decision was open for criticism on appeal, although Mr. Held's testimony would not have affected Allied's liability. Mr. Orr properly preserved the issue during the trial if Allied wanted to raise the issue. Appellate counsel believed the exclusion of Mr. Held presented a good issue for appeal.[137]

Even with Mr. Held's opinion testimony, the parties stipulated that Metro/Travelers still had several millions of dollars of damages that were not contested. Accordingly, even if Mr. Held had testified, and even if his testimony was credited after cross examination, substantial damages still were caused by the fire. These damages would not have been affected by the admission of Mr. Held's opinion testimony.

I have also reviewed the Report of David Randolph Smith criticizing Mr. Orr's failure to seek a continuance when Mr. Held was excluded as a witness and asserting that there was a violation of the standard of care. I respectfully disagree. The question of whether to seek a

---

[137] See Deposition of Linda Hamilton Mowles.

51

continuance is generally one of professional strategy and professional judgment after considering several factors. Here, Metro and Travelers' counsel testified that he would have opposed a continuance. Given the fact that the case was 5 years old, the chance of a continuance being granted was low. In fact, Judge Binkley indicated in a post-trial hearing in November, 2010, that the trial court would not have granted a continuance.

In addition, the exclusion of Mr. Held as a witness on some issues also does not appear to have been as important as Judge Binkley's determination on relevancy of post-trial plans for the property. Judge Binkley's legal determination concerning the relevancy of post-fire plans for the property were not dependent on whether Mr. Held was permitted to provide all of his proposed testimony.

3. Handling of the Adverse Jury Instruction.

During the hearing before Judge Binkley in September, 2010, Mr. Orr accepted responsibility for the issue giving rise to the adverse jury instruction concerning Allied's failure to produce an appropriate witness. To his credit as a professional, Mr. Orr accepted blame in the underlying case and he repeatedly tried to protect Allied. Even after Ms. Casey became hostile in her communications toward Mr. Orr in mid-September, 2014, Mr. Orr accepted responsibility on this issue.

However, the facts in the underlying case also reflect that Mr. Orr repeatedly consulted with Allied in an effort to secure the proper representative. Allied was, and is, a large company with substantial legal resources and its own risk management personnel who were, and are, admittedly knowledgeable about the legal process. A company, particularly a company the size of Allied with its own risk department and legal department, bears responsibility for presenting a witness with appropriate credentials and appropriate knowledge. The lawyer assists in

52

identifying an appropriate person. Ultimately, Allied bore responsibility to designate an appropriate witness.

Mr. Orr accepted the blame before the trial court for the failure of Allied to produce a witness. In this case, however, it is clear that there was a sustained effort by Mr. Orr to secure the proper witness from Allied, including Ms. Schuler, in 2009 and 2010. Those efforts to work with the company and help the company identify an appropriate person to testify on its behalf complied with the standard of care.

Mr. Orr objected to the adverse instruction suggested by Metro and Travelers. At trial, Mr. Orr ultimately agreed to a "compromise" instruction to lessen the impact of the instruction. I concur with Judge Stevens' characterization of this issue during her deposition in this case, and her observation that this decision by Mr. Orr was one of professional judgment—a professional strategic decision that had to be made at the time, with the risk of a potential waiver of future objection.

Mr. Orr exercised professional judgment during the course of the trial to minimize the possible impact of the adverse instruction. The exercise of such judgment does not, in my professional opinion, constitute a violation of the standard of care. It constituted the exercise of professional judgment with a known calculated risk of waiver.

The trial court's insistence on giving "an instruction" on the facts of this case was unusual, particularly since the policies and procedures were never introduced at trial, and particularly since Mr. Orr offered Ms. Shuler for a deposition on September 8, 2010 (several weeks before the trial).[138] After reviewing volumes of testimony and documents in this case, I located no documents or testimony indicating that any jurors have stated that the instruction

---

[138] Doc. LOG 0001975, Exhibit 38.

53

negatively impacted the jury, or caused the jury to impose liability or impose large damages. At least juror interviewed post trial reported that the adverse jury instruction did not appear to impact the jury's deliberations in the case. None of the witnesses who observed the trial suggested that the jury overreacted to the instruction. The policies and procedures were not introduced into evidence.

There is no way to suggest with any degree of probability that the inclusion of the jury instruction adversely affected the deliberations of the jury. On the other hand, according to the testimony of Ms. Stevens and Mr. Olivas, the trial went badly for Allied after Classic Pride's witness (Billy Ray Adams) suggested that Allied was at fault, and after Allied's "key" witness, Mr. Gill, failed to impress the jury. Moreover, Metro/Travelers' attorney, Mr. Warren testified that his conclusion (after all of the evidence was presented) was that Allied never recognized that the jury blamed Allied for contributing to the fire. The fact that Classic Pride and Allied's former operations director, Mr. Gill, provided harmful testimony to Allied has apparently never been recognized by Allied.

4. Compliance with Standard of Care Post-Trial as Local Counsel

Post-trial, Mr. Orr and the role of the law firm of Levine Orr was extremely limited.[139] It is my professional opinion that Mr. Orr or his law firm complied with the standard of care in fulfilling their limited role. Allied's criticism of Mr. Orr and his law firm that the issue of Mr. Held's exclusion as not properly raised in the new trial motion is not well founded. The post-trial motions were prepared by a different law firm at the insistence of Allied. Allied had clearly given instructions that it did not want Mr. Orr or his firm substantively involved with post trial events.

---

[139] See e.g. Doc 25489, Exh. 84, R. Orr Letter, December 10, 2010 [limited role; local counsel]

54

After the trial, it is undisputed that Allied and Ms. Casey wanted Mr. Orr "off the case." Mr. Orr role post-verdict was limited by the client.[140] Ms. Casey was hostile and accusatory and was not interested in Mr. Orr's opinions in how the matter might be handled during the post-trial phase of the case. Mr. Orr was referred to as "local counsel" to enable Allied and AIG to have their newly selected counsel, lawyers with the firm of Weinberg Wheeler, "take over the case."[141] Mr. Orr was not actively involved in formulation of the post-trial motions or briefs in the case, nor did the client ask for, or indicate that Allied desired his participation.

Allied and AIG controlled the post-trial phase of the case. Mr. Spruance, Allied's in-house counsel, was also actively involved with the case post-trial. Mr. Spruance actively controlled post trial settlement discussions. AIG and Allied retained a specialized Atlanta firm, Weinberg Wheeler, to handle the post-trial motions and met with the Atlanta counsel in Arizona to discuss the strategy moving forward. Mr. Orr and Levine Orr were not asked by the client to help with post-trial strategy or preparation of any post trial motions.

It is my professional opinion that Mr. Orr and his law firm complied with the applicable standard of care concerning the limited role they played during post trial proceedings. Two months before the motion for a new trial was filed, Mr. Orr informed Allied's new counsel at Weinberg Wheeler, as well as Ms. Casey and AIG, that any issue that Allied's new counsel wanted to raise on appeal should be included in the motion for a new trial.

I have reviewed Mr. Smith's criticisms that Mr. Orr and his law firm should be held responsible for post-trial preparation of the motion for a new trial. I respectfully disagree with Mr. Smith. Mr. Orr did not select, nor was he asked to select, the issues for a new trial. As early

---

[140] See too Doc. 421, Exh. 196 [discussion with AIG re: removal of Orr 10/2/2010] Doc 1042 [discussion 10/25/2010 regarding using Orr as "local counsel"], ["motion(s) sent to former counsel 11/1/2010] Exh. 199.
[141] D. Stevens Deposition, p. 91.

55

as October 20, 2010, Mr. Orr had informed new counsel hired by AIG and Allied that any issues which that Allied wanted to raise on appeal should be presented in the new trial motion.

Mr. Orr and his law firm do not bear professional responsibility for the alleged omission of issues from the post-trial motion in this case, nor does Mr. Orr or his law firm bear responsibility for the alleged waiver of any such issues on appeal. Mr. Orr and Levine Orr were not engaged to perform these legal tasks, and their role was limited by Allied. Mr. Orr and his law firm complied with the applicable standard of care concerning their limited post trial role.

The strategic post-trial decisions were made primarily in this case by AIG, Allied, and the Weinberg Wheeler firm. The Weinberg Wheeler attorneys communicated regularly with Ms. Casey and Mr. Spruance. The Weinberg Wheeler firm, according to the Weinberg Wheeler attorneys, reached certain strategic decisions concerning the issue of Mr. Held. Mr. Orr was not involved in any of these strategic decisions nor was his recommendation ever sought by Allied or AIG.

Mr. Orr signed the motion for a new trial in his limited capacity as local counsel, and the limited time spent on the matter reflects that he complied with his role as local counsel. The standard of care did not require Mr. Orr or the attorneys at Levine Orr to second and third guess the strategy of the two well respected law firms specifically retained by Allied and AIG to handle the post-trial motions and to prepare the appeal.

AIG and Allied placed no reliance upon Mr. Orr or his law firm to serve in any other capacity other than local counsel during the post-trial proceedings. Allied's argument in this case that it was looking to Mr. Orr or his law firm to perform any substantive tasks other than serving a limited role as local counsel is completely at odds with Allied's own testimony and behavior in the underlying case.

56

Allied and AIG did not actively seek Mr. Orr's guidance or substantive recommendation for the post-trial motions. He was not involved with the appeal. The formulation of the issues, and how to present those issues on appeal, were handled by new counsel hired by AIG and Allied, not members of the Levine Orr law firm or Mr. Orr. It is also my professional opinion that Mr. Orr and his firm were not retained to prepare the motion for a new trial or to work on the appeal. They complied with the standard of care for their limited role after the trial was completed. Nothing that Mr. Orr or members of Levine Orr did or did not do negligently caused the alleged injuries about which Allied now complains.

5. Allied's Fault Considerations.

It is also my professional opinion that Allied's own risk management personnel bear fault for the result in the underlying litigation. The facts of this case reflect that Ms. Casey and Allied quickly accused Mr. Orr of "malpractice" after the trial court ruled adversely on several pretrial issues on September 9th, 2010 and before first witness ever testified in the underlying case. Yet, at the same time, it refused to accept recommendations of his insurer, AIG to resolve the case before, during and after the trial. Allied's own risk management personnel were responsible to Allied and should have exercised due care in management of the company's risk management decisions.

Allied has never recognized its error in failing to designate a proper corporate designee. Mr. Orr has accepted criticism on this issue and, as described by one witness, "fell on his sword," to deflect criticism of the client. However, Allied clearly failed a number of times to designate the correct representative despite repeated efforts by Mr. Orr to secure the proper representative. While there is no evidence that the adverse instruction that resulted from this controversy changed anything in the case, Allied still bears fault for this issue.

57

Allied also failed to reasonably mitigate and manage Allied's own litigation risk in this case. Allied failed to exercise reasonable judgment by refusing to seriously consider reasonable settlement proposals in this case, particularly after it became apparent that the trial court had ruled against the company on a number of pretrial matters. Allied was, and is a sophisticated user of legal services, and it was aware of the potential risks associated with a loss at trial. Metro's attorney, Jim Warren, verified that the case could have been settled for somewhere between $500,000 and $985,000, almost to the end of the trial. Judge Stevens' testimony echoes that this case could have been settled between $500,000 and $750,000 during the trial.

It does not appear that Allied ever wanted to settle the case at any reasonable amount regardless of the facts. For example, even after the jury concluded that Allied was at fault and returned a judgment for more than $7 million against Allied, David Spruance, the in house attorney for Allied, informed Allied's new counsel at Weinberg Wheeler and AIG that Allied was not interested in any settlement discussion more than $ 1 million. Indeed, with the discovery produced in this case, it is apparent that Allied criticized AIG for finally settling the case in 2012. Allied suggested in 2012 that Allied might initiate litigation against AIG because of the settlement.

Allied does not appear to have accepted the fact that the jury in 2010 sided with Metro and Travelers on the issue of Allied's fault. Allied failed to properly assess, manage and mitigate Allied's risk. Allied's own risk personnel failed to heed the recommendations of its insurer, and failed to pursue reasonable settlement opportunities. Had it exercised appropriate care in managing and mitigating its own litigation risk, the case could have, and should have been settled far below the verdict. Allied and its risk management department knew the substantial risk associated with going to trial with this case. Allied failed to exercise due care in mitigating

58

that risk.[142] As a result of Allied's own poor judgment and its own poor risk management decisions, the insurer of the claim, AIG, ultimately had to pay an amount to settle the case in 2012 that far exceeded Allied's deductible. The evidence is strong that the underlying case could have been resolved in 2010 at an amount between $500,000 and $750,000 but for the poor risk management decisions exercised by Allied.

*********************

Respectfully submitted,

*[signature]* 2 SEPT 2014

WILLIAM S. WALTON, #11177
The Pinnacle at Symphony Place
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
Phone: (615) 651-6700

---

[142] See too Doc. 32126, Exh. 146 [M. Casey, D. Spruance "not interested in mediating" "disagree value is in excess of $3 million," threatening AIG]

59